# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1348

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Jose Pizano, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: November 16, 2004
Filed: April 13, 2005

_____

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Jose Pizano pled guilty to conspiracy to distribute methamphetamine mixture and conspiracy to launder money. Although he faced a mandatory minimum sentence of 120 months for the drug conviction, he qualified for the safety valve. His guideline range was calculated at 70-87 months, and the government moved for a downward departure for his substantial assistance in investigating and prosecuting other members of the conspiracy. The district court[1] granted the substantial assistance motion and sentenced Pizano to 18 months. The government appeals the

_____

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

sentence, asserting that the extent of the court's departure was unreasonable. After carefully reviewing the record, we affirm.

Pizano was a real estate agent living in the Chicago area. His niece, Alejandra Pizano, and her husband, Joel Sanchez, were involved in a drug ring in Sioux City, Iowa. Alejandra asked Pizano to supply her with some MSM, a horse vitamin which is used as a methamphetamine dilutant. Pizano ordered some MSM from a veterinary supply store in Omaha and had it delivered to his house, where his niece picked it up. Pizano later bought MSM for Salvador Sanchez-Flores, another member of the drug ring, and delivered it to him in Sioux City even though Alejandra and her husband advised against it, telling Pizano that they thought Sanchez-Flores was dangerous. Pizano supplied the conspirators with a total of 500 pounds of MSM, which they cut, at a three to one ratio, into methamphetamine they obtained from California. Members of the drug ring also forwarded cash and money orders to Pizano for him to make purchases for them. He bought a 2002 Cadillac Escalade for Sanchez-Flores and signed a purchase agreement and made a down payment for a house in Sioux City for his niece and her husband.

Sioux City drug task force officers were alerted by Omaha police that Pizano had purchased a large quantity of MSM. They followed Pizano to a meeting with Sanchez-Flores and arrested him. Pizano was indicted on one count of participation in a drug conspiracy and three counts of participation in a money laundering conspiracy. He entered into a plea agreement, under which he pled guilty to two counts: (1) distributing methamphetamine mixture in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (stipulating that he was responsible for at least 15 kilograms of methamphetamine mixture), and (2) conspiracy to launder money in violation of 18 U.S.C. § 1956(h).

Pizano faced a mandatory minimum sentence of 120 months on the drug conviction, but he was found eligible to benefit from the safety valve which permits

a sentence below the mandatory minimum. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. He satisfied the five statutory criteria for the safety valve because he had no prior offenses, his crime did not involve violence or a firearm, no one was killed or seriously injured, he did not play a leading role in the drug offense, and the government agreed that he had made a truthful proffer of all the information he had about the drug conspiracy. See 18 U.S.C. § 3553(f).

The large quantity of methamphetamine attributed to Pizano resulted in a base offense level of 38 for his drug conviction, but it was conceded that he was a minor participant eligible for a mitigating role adjustment under United States Sentencing Guidelines (U.S.S.G.) § 3B1.2. That capped his base offense level at 30, pursuant to § 2D1.1(a)(3). Downward adjustments of two levels were made to account for minor role under § 3B1.2(b) and for the safety valve under § 5C1.2, resulting in an adjusted offense level on the drug count of 26. Pizano's base offense level of 28 for money laundering was enhanced two levels because he had been convicted under 18 U.S.C. § 1956. See § 2S1.1(b)(2)(B). The two counts of conviction were then grouped as closely related counts under § 3D1.2(c) with a resulting offense level of 30, which was the higher of the two adjusted offense levels. See § 3D1.3(a). After a three level reduction for acceptance of responsibility under § 3E1.1, his total offense level was 27. Since Pizano had no criminal history points, his criminal history category was I. The resulting guideline sentencing range was 70-87 months.

At sentencing neither party objected to the presentence report calculations, the district court adopted the report's factual findings and recommended guideline applications, and the government moved for a substantial assistance reduction under § 5K1.1. The government stated that its motion was based on Pizano's grand jury testimony, which was expected to lead to the indictment of his niece for drug charges and of Sanchez for drug and money laundering offenses. The prosecutor recommended a 10% reduction from Pizano's guideline range, which the government

says would have resulted in a sentence of 63 months. Pizano asked the court for "substantial time off" from the calculated sentencing range.

During the sentencing hearing, the court engaged in an extended colloquy with the prosecutors to learn what the government had considered in evaluating Pizano's assistance and making its recommendation on sentencing. The court asked how helpful Pizano's testimony was expected to be in indicting Alejandra Pizano and Joel Sanchez. Counsel responded that Pizano was the primary witness against his niece for drug charges, one of the primary witnesses against Sanchez for money laundering charges, and a corroborating witness against Sanchez for drug charges. The court also wanted to know whether Pizano was being credited for the likelihood that his testimony would help induce guilty pleas or obtain convictions through trial. Counsel answered that the government was not crediting Pizano for what was still speculative. The court asked whether the government would later move for a substantial assistance reduction under Federal Rule of Criminal Procedure 35(b) if Pizano's testimony helped secure their convictions, and the prosecutors responded that they were unsure.

After this discussion the court decided that it would credit Pizano for the usefulness of his testimony in respect to the other cases. The court considered the probability that Alejandra Pizano and Joel Sanchez would be indicted and convicted, as well as the significance for these prosecutions of Pizano's readiness to testify. The court observed that if the timing were different and Pizano were being sentenced after the other two had been indicted and were facing trial with him as a key witness, the government would likely recommend a greater departure. It then sentenced him to 18 months on each count, to run concurrently.

The government contends on appeal that the departure granted by the district court was almost 75% below Pizano's guideline range and that it was unreasonably excessive. It argues that the extent of the departure is not commensurate with the assistance Pizano rendered and that the court did not give proper consideration to its

evaluation of his assistance and its recommendation of a 10% reduction. It states that substantial weight is due its recommendation according to the commentary in the guideline manual. U.S.S.G. § 5K1.1 cmt. n.3. At oral argument it declined to specify any particular percentage point that would separate a reasonable departure in this case from an unreasonable one.

The government also alleges that the court's evaluation of the significance and usefulness of Pizano's testimony was impermissibly based on factors unrelated to assistance. The government contends that courts ruling on downward departure motions cannot consider factors unrelated to the defendant's assistance, citing cases from other circuits and the commentary to § 5K1.1. It asserts that the district court relied on reasons that were too speculative to be tied to the assistance Pizano had provided.

We disagree with the government's contention that in this case the district court considered factors unrelated to assistance. The court made its decision based on its evaluation of how Pizano's grand jury testimony had helped the government in prosecuting other members of the conspiracy. Moreover, the guideline commentary is not explicitly so limiting as the government contends. It discusses a court's evaluation of the "nature, extent, and significance" of a defendant's assistance but does not say that only these considerations are legitimate, and it refers to "relevant factors" without specifying what they are. See § 5K1.1 cmt. background; cf. United States v. Anzalone, 148 F.3d 940, 942 (8th Cir. 1998) (suggesting that a district court may appropriately consider factors unrelated to substantial assistance when exercising its downward departure discretion).

We review a sentence for unreasonableness, guided by the sentencing factors listed in 18 U.S.C. § 3553(a). United States v. Booker, 125 S. Ct. 738, 765, 766 (2005). To make the reasonableness determination, we ask whether the district court abused its discretion. See United States v. Dalton, No. 04-1361; United States v.

Haack, No. 04-1594 (both decisions also filed on today's date). Although the federal sentencing guidelines are no longer mandatory, a sentencing court is still to begin its analysis by considering the guidelines. See Booker, 125 S Ct. at 767 ("The district courts . . . must consult [the] Guidelines and take them into account while sentencing.").

The sentencing guidelines provide five factors for courts to consider when deciding whether and to what extent a sentence should be reduced because of a defendant's substantial assistance: the court's evaluation of the significance and usefulness of the assistance, the reliability of the information, the nature and extent of the assistance, any injury or risk of injury to the defendant or his family resulting from the assistance, and the timeliness of the assistance. U.S.S.G. § 5K1.1. In reviewing the reasonableness of the sentence imposed by the district court, we will consider each of these factors in turn.

The first factor in §5K1.1 is "the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered." In this case the district court attempted to learn from the government how helpful Pizano's testimony would be in obtaining indictments of other conspirators, and it made a detailed exploration with government counsel about how they had evaluated Pizano's assistance. The court expressed its concern that the government's recommendation did not reflect the likelihood that the other two conspirators would plead guilty or go to trial with Pizano as a key witness, and it inquired about the government's evaluation of that and how it might be credited. The court thus did not ignore the government's evaluation of the usefulness of Pizano's testimony, but it attempted to calculate the probability of there being additional future benefits to the government from his assistance.

The colloquy at the sentencing hearing did not devote equal time to all guideline factors, but each was addressed in some way. The second § 5K1.1 factor

is "the truthfulness, completeness, and reliability of any information or testimony provided by the defendant," and the government stated at the hearing that it "had no concerns about [Pizano's] truthfulness." The third factor was directly related to the court's extended inquiries, for it addresses "the nature and extent of the defendant's assistance." Pizano cooperated in the investigation of his niece, a close family member, and her husband, a major figure in the conspiracy. His cooperation involved debriefings and supplying sworn testimony before a grand jury. In addition to helping the government prosecute these individuals, Pizano's testimony could be instrumental in seizing assets from the group's money laundering scheme. The district court had reason to find that Pizano's assistance was of a nature and extent that warranted a significant reduction in sentence.

The fourth factor is "any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance," and Pizano's attorney advised the court at the sentencing hearing that the members of the conspiracy are "dangerous people" and that Pizano was "in fear." The government did not challenge those assertions, and the presentence report stated that Sanchez-Flores, another actor in the conspiracy, was considered dangerous by other conspirators. The district court had reason to believe that Pizano put himself or his family at risk when he testified. The final factor in § 5K1.1 is "the timeliness of the defendant's assistance," and the parties agree that Pizano assisted the government about one month after his indictment. The government comments that he could have begun cooperating earlier in the investigation, but it does not argue that the assistance was untimely.

The commentary and background notes in the guideline manual give further guidance for the court's consideration of a substantial assistance departure. While "[l]atitude is . . . afforded the sentencing judge to reduce a sentence based upon variable relevant factors," § 5K1.1, cmt. background, the judge is also to give "substantial weight" to the prosecutor's evaluation of the extent of the defendant's assistance, § 5K1.1, cmt. n.3. The manual does not define "substantial," a word whose

meaning varies depending on its legal context. See, e.g., Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) ("substantial evidence" meaning less than a preponderance). Reading § 5K1.1 together with the related guideline notes suggests that courts are to give the government's evaluation serious, but not necessarily decisive, weight. If the Sentencing Commission had intended that courts were obligated to adopt the government's recommendation, it would not have started § 5K1.1 with a factor focusing on "the *court's* evaluation of the significance and usefulness of the defendant's assistance," § 5K1.1(a) (emphasis added), or talked about the latitude a sentencing court has, § 5K1.1, cmt. background.

We conclude that serious consideration needs be given the government's recommendation, but that it is certainly not controlling. The record indicates that the district court seriously considered the government's recommendation before arriving at its own evaluation of the significance and usefulness of Pizano's assistance. In accordance with 18 U.S.C. § 3553(c)(2), the district court stated its reasons for departing from the guidelines range, and these reasons were based on its examination of the facts and were related to the nature, extent, and significance of Pizano's assistance.

The district court sentenced Pizano before the Supreme Court decided Booker, and it did not explicitly analyze § 3553(a) factors other than those tied to the then mandatory guidelines. We have considered the statutory factors in our review of the sentence and conclude that they support the reasonableness of the district court's sentencing decision. Relevant to "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), are the facts that Pizano was not personally involved in the distribution of methamphetamine or in any criminal conduct until these offenses when he was in his early forties and purchased the horse vitamin at the behest of his young niece. His expression of regret at the sentencing hearing was also perceived by the district court to be genuine. We conclude from the record that the district court's sentence was not inconsistent with

the statutory goals of adequately deterring criminal conduct, § 3553(a)(2)(B), and protecting the public from the defendant's further crimes, § 3553(a)(2)(C). Finally, we are satisfied that the extent of the district court's departure would not create an unwarranted disparity under all the circumstances of Pizano's case. See § 3553(a)(6); Booker, 125 S. Ct. at 767.

Although the extent of the court's departure was well below the government's recommendation, we conclude that the district court did not abuse its discretion in this case and that the sentence imposed was not unreasonable. Accordingly, the judgment of the district court is affirmed.

_____