# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-2901/04-2933

_____

United States of America,     *
              *
    Appellant/Cross-Appellee,  *
              *  Appeal from the United States
              *  District Court for the Northern
    v.          *  District of Iowa.
              *
Travis Ray Burns,      *
              *
    Appellee/Cross-Appellant.  *

_____

Submitted: May 10, 2005
Filed: February 16, 2006

_____

Before WOLLMAN, BRIGHT, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

The United States appeals arguing the district court's[1] sixty percent downward departure was excessive. Travis Ray Burns cross-appeals arguing the district court erred in determining the starting point for its departure. We affirm.

_____

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

I

Burns was indicted on one count of conspiracy to manufacture and distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. The government notified Burns it intended to seek enhanced penalties under 21 U.S.C. § 851, making him subject to a mandatory life sentence. Absent the § 851 enhancement, Burns faced a sentencing range of 188 to 235 months. Burns cooperated and in return the government agreed to move for a downward departure under United States Sentencing Guidelines (U.S.S.G.) § 5K1.1 and 18 U.S.C. § 3553(e).

At sentencing, the government explained Burns immediately admitted his involvement and debriefed on two separate occasions, providing detailed information on several groups involved in manufacturing methamphetamine. Burns testified twice before the grand jury, and provided information in several ongoing investigations. His cooperation assisted the government in establishing drug quantity evidence against Brad Messerly, and he was a key witness against Victor DeFoe, thereby enabling the government to obtain an indictment which led to his plea of guilty. The government characterized Burns's cooperation as timely, truthful and complete, and recommended a fifteen percent departure from a 360 month sentence.

The district court rejected the government's recommendation and departed sixty percent to 144 months. The court summarized its consideration of the § 5K1.1 factors as follows:

> I'm going to use 360 months as a starting point. In this case I specifically find under the 5K1.1 factors, factor number 5, the timeliness of the defendant's assistance, the defendant was exceptionally timely in this case. My understanding is he started cooperating as soon as he was arrested. To me that's exceptional timeliness. While some defendants start that early, virtually no defendants start earlier than that . . . .

So I find that his timeliness was exceptional and apparently started cooperating before he was advised of the impact of the United States Sentencing Guidelines, before he knew anything about how the guidelines might affect his sentence, before he exercised his Sixth Amendment right to have counsel present. So I think in this case the fifth factor weighs very heavily in favor of the defendant . . . .

Number 4 does not apply, any injury suffered or danger of risk because I haven't heard anything about that.

Number 3, the nature and extent of the defendant's assistance, in this case based on the representations of the assistant U.S. attorney, I find that the defendant provided every single bit of information he knew, so you couldn't – the extent of the defendant's assistance could not be greater in the sense that he provided all of the information he knew.

Now, it's true that some defendants have greater information which leads to indictments of more people. But I don't think that's necessarily the test. I think the test is did the defendant provide substantial assistance on everything he knew, and in this case he did. So the defendant scores very highly on the third prong.

Defendant scores very highly on the second prong, truthfulness, completeness, and reliability of the information. There's no information that the defendant's substantial assistance was anything but a hundred percent complete, a hundred percent truthful, and a hundred percent reliable. So Mr. Burns scores very highly on the second prong.

On – the first prong is the Court's evaluation of significance and usefulness of the defendant's usefulness taking into consideration the government's evaluation of the assistance rendered. Here the government has indicated that the defendant testified twice in front of the grand jury, that he established the drug quantity on one defendant and led to the indictment and guilty plea of another defendant. I find that that was both very significant and very useful.

Now for some reason which the government refuses to disclose, they only recommend 15 percent, but they won't tell me why they only

recommend 15 percent. And the government refuses to indicate how any one of the five 5K1.1 factors affect the 15 percent recommendation.

So while I do take into consideration the government's evaluation of the significance and usefulness, it's hard to put any weight on the 15 percent recommendation because the government refuses to disclose how they arrive at that recommendation.

And looking back on the other sentencings that I've had, that recommendation is in my view substantially lower than other recommendations the government has made for similarly situated defendants.

Having said all that, I have the independent right under 5K1.1 to evaluate the substantial assistance based on the 5K1 factors as I see it.

Having taken into consideration the fact that the defendant scores very, very highly on the second factor, the third factor, and the fifth factor, I'm going to reduce the defendant's sentence substantially beyond what the government recommends in this case. That ought to come as no surprise to the government because I have a ten-year history of doing that because I just evaluate the five factors differently than – than how the government does, and the government refuses to disclose how they do it to me.

Sent. Tr. at 12-15.

On appeal, the government argues the district court ignored its recommendation for a fifteen percent departure, and the court's sixty percent departure was excessive in light of Burns's assistance. Burns cross-appeals arguing the district court should have departed from the 188 to 235 month guideline range instead of from the 360-month presumptive life sentence.

## II

At sentencing, a district court must determine the appropriate guideline sentencing range, including whether "a traditional departure is appropriate under . . . the Federal Sentencing Guidelines." United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir.), cert. denied, 126 S. Ct. 276 (2005). "Once the guidelines sentence is determined, the court shall then consider all other factors set forth in [18 U.S.C.] § 3553(a) to determine whether to impose the sentence under the guidelines or a non-guidelines sentence." Id. at 1003. On appeal, we review the district court's interpretation and application of the guidelines de novo and any departure from the guideline range for an abuse of discretion. United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005). If we conclude the guidelines were properly employed, we "review [the] sentence for unreasonableness, guided by the sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Pizano, 403 F.3d 991, 995 (8th Cir. 2005).

The parties agree Burns was subject to a mandatory life sentence. Thus, there is no dispute as to the appropriate guideline range. Similarly, inasmuch as the government moved for a downward departure, it concedes the district court acted within its discretion in concluding a departure was appropriate. Nevertheless, the government contends the district court's departure was excessive in light of its recommended fifteen percent departure.

"Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person . . . the court may depart from the guidelines." U.S.S.G. § 5K1.1. The commentary to § 5K1.1 requires "substantial weight" be given to the government's evaluation of the extent of the assistance. U.S.S.G. § 5K1.1 cmt. n.3. The government's recommendation is not, however, controlling and ultimately the district court determines the appropriate reduction. Haack, 403 F.3d at 1005; see also U.S.S.G. § 5K1.1(a). In deciding the appropriate reduction, "[a] recommendation by the

government that does not adequately explain its reasoning is entitled to less weight . . . than a more fully explained recommendation." Haack, 403 F.3d at 1005 n.2.

To depart, a court must have "reasons" that shall be "stated." See 18 U.S.C. § 3553(c); U.S.S.G. § 5K1.1(a). The § 5K1.1 factors which the district court must consider are not, however, an "'exhaustive list,' and the district court is not required 'to examine each of the listed factors in § 5K1.1 on the record and explain exactly just what weight it gives to each in its departure decision.'" United States v. Dalton, 404 F.3d 1029, 1033 (8th Cir. 2005) (citations omitted). When exercising its sentencing discretion, a district court abuses its discretion when it

> fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

Haack, 403 F.3d at 1004.

The government contends the district court abused its discretion by failing to adopt its recommendation for a fifteen percent downward departure. It further contends the district court offered insufficient explanation for its sixty percent departure. We disagree. Indeed, viewing this record, it is the government that was unable, despite repeated invitations from the district court, to offer any explanation for its position. Conversely, the record demonstrates the district court seriously considered the government's recommendation before arriving at its own evaluation of the significance and usefulness of Burns's assistance. The court carefully evaluated the § 5K1.1 factors and provided a detailed explanation for the sentence. It noted Burns's cooperation began immediately upon his arrest – even before he exercised his right to counsel or was aware of the impact the Sentencing Guidelines would have on his sentence. His cooperation included two appearances as a key witness before the

grand jury and his testimony proved drug quantity against one defendant and led to the indictment and guilty plea of another. Additionally, the government indicated Burns had provided information about other individuals which it hoped would lead to other charges, and characterized his cooperation as timely, truthful and complete.

In arriving at our decision today, we are guided by this court's earlier decisions in Dalton, Haack, and Pizano. In Dalton, we concluded the district court's seventy-five percent downward departure was unreasonable because the defendant 1) provided only corroborative testimony before the grand jury, 2) did not implicate a large number of people, 3) did not serve as a primary government witness against anyone, and 4) absconded from custody while on pretrial release. 404 F.3d at 1033. In Haack, we reversed a significant downward departure (fifty-seven percent), finding it unreasonable in light of the defendant's limited assistance. 403 F.3d at 998. There, the defendant made incriminating statements when he was first arrested which helped officers obtain a search warrant. Id. at 999. For several months thereafter, however, the defendant refused to cooperate. When he finally did cooperate, his information was of limited use to the government and he was not available to provide useful grand jury testimony. Id. at 1005. Finally, we expressed reservations about comments the district court made at sentencing suggesting the departure may have been based in part on the court's dissatisfaction with the sentencing guidelines. Id. at 1006; see also United States v. Saenz, 428 F.3d 1159, 1163 (8th Cir. 2005) (reversing a downward departure where the defendant only testified as a corroborating witness at a sentencing hearing).

Unlike Dalton and Haack, we find no basis in this case for concluding the district court abused its discretion. Burns began his cooperation immediately and continued to cooperate through sentencing. He offered key grand jury testimony and provided detailed information about several groups who were manufacturing methamphetamine. Most notably, his cooperation was not diminished by the kind of lapse in judgment demonstrated in Dalton. Nor was his sentencing marred by any

suggestion the district court took into account an improper or irrelevant factor. As such, this case is more like the seventy-five percent downward departure upheld in Pizano, where the defendant began his cooperation immediately, supplied grand jury testimony against a major figure in the conspiracy, and put himself at risk. 403 F.3d 995-96; cf. United States v. Coyle, 429 F.3d 1192, 1192-93 (8th Cir. 2005).

We conclude the district court's departure was not an abuse of discretion. In light of Burns's substantial cooperation, the 144-month sentence reflects a serious offense, promotes respect for the law, provides just punishment, deters criminal conduct, and protects the public from further crimes. See 18 U.S.C. § 3553(a)(2)(A)-(C). Based on these § 3553(a) factors, we conclude Burns's 144-month sentence was not unreasonable.

Finally, we reject Burns's cross-appeal arguing the district court departed from the wrong guideline range. Burns concedes he was subject to a mandatory life sentence. Nevertheless, he argues the government's substantial assistance motions "waived" the mandatory life sentence, leaving the district court with a sentencing range of 188 to 235 months from which to depart. We reject this argument as being without merit. The government's substantial assistance motion did not negate the § 851 enhancement that made Burns eligible for a life sentence. Rather, it permitted the district court to sentence below the mandatory life sentence. Thus, the district court properly departed from a presumptive life sentence of 360 months.

III

The judgment of the district court is affirmed.

WOLLMAN, Circuit Judge, concurring and dissenting.

I concur in the court's holding that the district court did not err in basing its departure point at 360 months.

I dissent, however, from the affirmance of the 60 percent departure from the 360-month guidelines range for the reasons set forth in Judge Colloton's opinion for the court in United States v. Saenz, 428 F.3d 1159 (8th Cir. 2005).

I start with the proposition that "[a]n extraordinary reduction must be supported by extraordinary circumstances." Saenz, 428 F.3d at 1162 (quoting United States v. Dalton, 404 F.3d 1029, 1033 (8th Cir. 2005)). Here, although Burns's assistance to the government was not insubstantial, it cannot fairly be considered as extraordinary. His assistance helped the government secure the indictment of one individual and helped establish drug quantity with respect to another individual. Moreover, there was no evidence that Burns's assistance caused any injury to himself or placed him in any danger. Likewise, the fact that Burns gave the government all the information he had alone does not render his assistance extraordinary. Although Burns started cooperating during his post-arrest debriefing, the government points out, without any challenge to this assertion, that many defendants divulge information shortly after arrest, so it is hard to see how the timeliness of Burns's cooperation can fairly be characterized as extraordinary.

That the district court refused to give significant weight to the government's recommendation of a 15 percent reduction because of its refusal to disclose how it had reached that determination does not by itself render suspect the court's reduction, Saenz, 428 F.3d at 1164. There is no indication in the record that the district court's decision to reduce the sentence was the result of judicial pique over what it might have considered prosecutorial intransigence. District judges after all are not minions of the

prosecutor's office. By the same token, United States attorneys are not subalterns of the district court.

The governing factor for me in this case is the overarching principle set forth in Saenz:

> Departures under § 5K1.1 and reductions under § 3553(e) should not be untethered from the structure of the advisory guidelines. They take place, rather, within the framework of an advisory guideline scheme designed to reduce unwarranted sentence disparities among similar defendants.

428 F.3d at 1162.

Accordingly, neither prosecutors nor district courts should yield to the temptation of indulging in solipsistic preferences in recommending and imposing sentences. Advisory though they may be, the guidelines stand as guideposts that are to be observed if we are not to see a return to the instances of unwarranted disparity the prevention of which led to the adoption of the guidelines themselves. As deferential to the considered, on-the-scene views of the district court as we appellate judges appropriately should be, nevertheless we have a responsibility to ensure that the guidelines are observed as advisory in practice and not merely in word.

When viewed in the light of Saenz's overarching principle, I must conclude that, even after giving due respect to the carefully considered views of a district judge who has had the experience of sentencing untold defendants over the years, the 60 percent reduction in this case was excessive in light of the relative insubstantiality of Burns's assistance. Accordingly, I would vacate the sentence and remand the case for resentencing in accordance with the views set forth in Saenz and the cases cited therein.

_____