In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3624

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NOLAN R. NELSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 CR 30107—**Richard Mills**, *Judge.*

ARGUED SEPTEMBER 27, 2006—DECIDED JUNE 21, 2007

Before POSNER, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* What is the meaning of life? Or perhaps more pointedly, what is the equivalent of a term of life imprisonment for sentencing purposes? In this appeal, we are presented with that very question as we review the district court's calculation of Nolan Nelson's sentence. Nelson, age 30, faced a mandatory minimum sentence of life imprisonment after he pleaded guilty to his third felony drug conviction. Because Nelson decided to cooperate with the government, the district court reduced his sentence to 262 months (21.8 years). Nelson now appeals, citing error in the district court's guideline calculation because it declined to use, as the starting point for its departure, the lowest offense level in the

United States Sentencing Guidelines associated with the range of "360-life," or level 37. The district court instead chose to calculate the sentence reduction from the higher offense level of 43, which corresponds to the guideline range of "life." We affirm the judgment of the district court because we do not accept Nelson's argument that the sentencing judge erred in calculating his advisory range in a manner that most closely reflects a plain reading of the Guidelines. In reaching this conclusion, we also note that the district court's methodology resulted in a lower sentence than Nelson would have received if the court had used his life expectancy to calculate his reduced sentence.

## I.  BACKGROUND

Between 1998 and 1999, Nolan Nelson transported crack cocaine from Chicago to Quincy, Illinois where he distributed the drugs through various individuals. Nelson's operation eventually led to his indictment in 2002 for conspiracy to distribute more than fifty grams of crack cocaine and more than five kilograms of powder cocaine, possession of crack cocaine with intent to distribute, and distribution of crack cocaine. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. After his arrest, Nelson agreed to cooperate with the government and pled guilty to the conspiracy charge in exchange for the government's agreement to dismiss the remaining charges against him.

After the application of various adjustments that are not at issue on appeal, Nelson's total offense level of 34 and criminal history category of VI resulted in a guideline range between 262 and 327 months.[1] Nelson's two previous felony drug offenses, however, subjected him to

---

[1] The 2004 edition of the Guidelines Manual was used to calculate Nelson's advisory range.

a mandatory minimum sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). Because Nelson's mandatory life sentence is greater than the maximum of his applicable guideline range, the Guidelines advise that the life sentence become his guideline sentence. *See* U.S.S.G. § 5G1.1(b).

At sentencing, the government asked the district court to impose a sentence below that of life to reflect Nelson's cooperation and assistance in the government's investigation and prosecution of a number of figures involved in Nelson's drug operation. *See* 18 U.S.C. § 3553(e).[2] The government regarded Nelson's assistance as having "far reaching value" and, therefore, worthy of its "exceedingly rare" recommendation that his mandatory sentence be reduced by four sentencing guideline ranges. The government suggested that the district court carry out the reduction by starting from offense level 43, the level associated with a life sentence. *See* U.S.S.G. Ch. 5, Pt. A. Next, the district court was asked to "clump" the six guideline ranges of "360-life" under category VI (offense levels 42 to 37) "together into one." *Id.* The government then recommended that the district court "go down three more from that" to arrive at offense level 34 and sentence Nelson at the bottom of the range. Based on Nelson's criminal history category of VI, this translated to a guideline range of 262 to 327 months[3] and a final sentence of 262 months.

---

[2] This provision states in part: "Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

[3] Notably, this would have been Nelson's guideline range if he were not subject by statute to a mandatory life sentence.

Nelson, in turn, argued that the applicable guideline range for his mandatory life sentence was the "360-life" range, and, as such, the district court should calculate his sentence by starting from offense level 37, the lowest offense level that supports a sentence of 360 months to life. By Nelson's methodology, a downward departure of four (from offense level 37 to 33) would result in a range of 235 to 293 months. Nelson therefore recommended that the district court sentence him at the bottom of this range to 235 months, approximately two years less than the government's proposed sentence.

After considering the parties' recommendations, the sentencing judge agreed that Nelson's cooperation with the government entitled him to a sentence below his mandatory minimum of life and granted the government's § 3553(e) motion. The judge then stated that the government's proposed reduction of four guideline ranges resulted in a total departure of nine offense levels from level 43 to 34 and was the equivalent of a 40% reduction in Nelson's life sentence.[4] As the judge commented, this reduction was "extremely generous" and "a rare beast" as a 20% reduction is more common based on sentences that he and other judges have imposed. Nelson was ultimately sentenced to 262 months' imprisonment and now appeals.

## II. ANALYSIS

We begin by addressing the government's contention that Nelson waived his right to challenge the district court's calculation of his sentence because he agreed to it

---

[4] In Nelson's criminal history category of VI, the term of imprisonment associated with each guideline range between offense levels 12 and 37 increases by approximately 10%. *See* U.S.S.G. Ch. 5, Pt. A.

before and at sentencing. It is true that by pleading guilty, Nelson agreed that "the effect of the mandatory life sentence is to make the offense level 43." *See* Plea Agmt. at 8. He also waived his right to challenge the manner in which his sentence was determined in exchange for the opportunity to cooperate with the government and earn a downward departure. *Id.* at 4. However, Nelson's plea agreement included a provision preserving his right to appeal if the district court calculated his sentence "on any basis other than by using, as the starting point for that departure, the bottom of the lowest guideline level and range that includes a potential life sentence." *Id.* Nelson's appeal raises this very issue because he argues that the district court erred in its calculation by starting from the highest guideline level associated with a life sentence. He therefore has preserved his challenge for appellate review.

As we turn to the merits of Nelson's case, we of course recognize that the Guidelines are now advisory, *United States v. Booker*, 543 U.S. 220, 245 (2005); nonetheless, the Guidelines still demand consideration by a sentencing judge, *id.* at 259-60; *United States v. Chamness*, 435 F.3d 724, 726 (7th Cir. 2006). This means that the sentencing judge must first correctly calculate the advisory guideline range and then, based on the sentencing factors set out in 18 U.S.C. § 3553(a), decide whether to impose a sentence within that range. *United States v. Orozco-Vasquez,* 469 F.3d 1101, 1107 (7th Cir. 2006). Nelson's appeal challenges only the district court's calculation, which we review de novo. *See Chamness*, 435 F.3d at 726.

The district court arrived at Nelson's sentence after it granted the government's § 3553(e) motion to sentence him below the statutory minimum of life imprisonment to reflect the amount of assistance he provided to the

government. In recommending the extent of the departure, the government's attorney remarked, "if the defendant was looking at anything other than mandatory life, I would be recommending 40 percent as the departure. . . . [But,] where do you start with when you're trying to assess what's 40 percent, what does that mean when you're talking about mandatory life? 40 percent of what?" Sent. Hr'g Tr. at 11-12. The government then suggested that the district court use the Sentencing Table to calculate Nelson's guideline range by using offense level 43 (life) in criminal history category VI as a starting point. *Id.* at 12-13; *see* U.S.S.G. Ch. 5, Pt. A.

On appeal, Nelson argues that the district court erroneously calculated his guideline range by choosing level 43 as the starting point for its departure instead of 37, which is associated with the 360-life range in a criminal history category of VI. *Id.* In support of his approach, Nelson relies on our decision in *United States v. Hayes*, 5 F.3d 292, 294 (7th Cir. 1993), where we considered a defendant's challenge to his forty-seven-month sentence imposed after the district court conducted a two-level downward departure from the applicable mandatory minimum of sixty months. In arriving at this sentence, the district court "first observed that the lowest United States Sentencing Guidelines . . . offense level for which a 60-month sentence could have been given is 24. Departing downward two levels for Hayes' substantial assistance results in an offense level of 22, which carries a sentencing range of 41 to 51 months." *Hayes*, 5 F.3d at 294. The defendant Hayes' sentence of forty-seven months fell within that range. *Id.* Hayes claimed error, arguing that the district court was required to sentence him within a guideline range of twenty-one to twenty-seven months, the range associated with his original offense level and criminal history category. *Id.* We disagreed and explained that because the defendant's statutorily required minimum sentence of sixty

months was greater than his applicable guideline range, the statutory sentence became his guideline sentence. *Id.* at 294-95 (quoting U.S.S.G. § 5G1.1(b)). We ultimately affirmed the sentence, finding that the district court's method of "starting with the lowest offense level consistent with a 60-month sentence and departing downward two levels from that point [was] linked appropriately to the structure of the Guidelines." *Id.* at 295. According to Nelson, it follows from our holding in *Hayes* that a sentencing judge who decides to depart from a mandatory minimum sentence of life should begin the downward departure from the lowest offense level consistent with that mandatory sentence, which in his case, Nelson argues, is level 37 (360-life). Nelson's position, however, overstates our holding in *Hayes* and misinterprets the Guidelines.

Our focus in *Hayes* was the calculation of a downward departure for substantial assistance and the extent of such a departure. *See id.* There, we stated that, because of Hayes' mandatory minimum sentence, "[t]he appropriate starting point for [his] downward departure was 60 months," not, as he suggested, the guideline range that resulted from his original offense level and criminal history category. *Id.* We went on to consider the district court's two-level downward departure and concluded that the *extent* of the departure was "linked appropriately to the structure of the Guidelines." *Id.* (citing *United States v. Thomas*, 930 F.2d 526, 531 (7th Cir. 1991) ("These [guideline] provisions suggest that departures based on a defendant's cooperation with authorities may warrant something on the order of a two-level adjustment . . . ."), *overruled on other grounds by United States v. Canoy*, 38 F.3d 893, 906 (7th Cir. 1994)). Our opinion was silent, however, on the point from which a sentencing judge must begin its downward departure from a mandatory minimum when confronted with more than one guideline range that encompasses the statutory sentence.

We now return to the calculation of Nelson's sentence. His prior criminal history subjected him to a mandatory minimum of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). Because that sentence is higher than Nelson's original guideline range of 262 to 327 months, § 5G1.1(b) of the Guidelines advises that his mandatory life sentence become his guideline sentence. A sentencing judge who chooses to depart downward from a mandatory minimum pursuant to 18 U.S.C. § 3553(e) may calculate the departure by quantifying the defendant's assistance either "by a simple numerical reduction in the offense level or by a percentage reduction of the total sentence . . . ." *United States v. Senn*, 102 F.3d 327, 332 (7th Cir. 1996).

In Nelson's case, the sentencing judge chose to reduce his life sentence by offense levels and begin the downward departure from level 43. In arguing that this was error, Nelson presumes that the applicable guideline range for a mandatory life sentence is 360 months to life. This presumption would be reasonable had this range been provided as the highest within which a defendant could be sentenced in a criminal history category of VI. However, the Guidelines go a step beyond 360 to life and set out a range of "life*." See* U.S.S.G. Ch. 5, Pt. A. Because Nelson is subject to the longest sentence a defendant can receive under the Guidelines, his corresponding guideline range should reflect the same. Accordingly, a straightforward interpretation of the Guidelines requires a finding that the applicable guideline range for a mandatory minimum sentence of life *is* life, which can only be found at offense level 43. *Id.* Nelson is unable to provide us with any authority that would persuade us to read the Guidelines differently and find error in the district court's

methodology.[5] The language of the Guidelines is clear; therefore, we conclude that the district court's decision to depart from Nelson's mandatory life sentence by starting at offense level 43 was proper.

We note that the sentencing judge could have calculated Nelson's sentence by a percentage reduction of his total sentence. *See Senn*, 102 F.3d at 332. At sentencing, the government indicated that it was faced with the impossible task of predicting the future to determine the length of Nelson's life sentence; however, such clairvoyance is unnecessary when life expectancy figures are available. Although the Guidelines themselves provide no numerical equivalent for a life sentence, the 2006 Sourcebook of Federal Sentencing Statistics ("Sourcebook") tells us that the Sentencing Commission defines a life sentence as 470 months. *See* Sourcebook, Appendix A, at http://www.ussc.gov/ANNRPT/2006/ appendix_A.pdf (last visited June 19, 2007); *Keller*, 413 F.3d at 711. This figure reflects the average life expectancy of federal defendants at the time of sentencing as determined by the United States Census Bureau. *See* 2005 Sourcebook, Appendix A

---

[5] In his brief, Nelson cites *United States v. Burns*, 438 F.3d 826, 831 (8th Cir. 2006), which affirmed a district court's reduction of a defendant's mandatory life sentence by departing from 360 months. *Burns*, however, was vacated and rehearing en banc granted shortly after Nelson filed his opening brief. In that case, the government recommended that the district court depart from 360 months to reflect the defendant's substantial assistance. 438 F.3d at 828. In that now-vacated opinion, the Eighth Circuit affirmed, concluding, *inter alia*, that "the district court properly departed from a presumptive life sentence of 360 months." *Id.* at 831. *But see United States v. Keller*, 413 F.3d 706, 711 (8th Cir. 2005) (affirming a district court's use of 470 months as the equivalent of the defendant's mandatory life sentence to calculate a percentage reduction based on his substantial assistance).

at http://www.ussc.gov/ANNRPT/2005/Appendix_A_Post. pdf (last visited June 19, 2007). If we apply this figure to Nelson's case, we arrive at a sentence of 282 months (470 months discounted by 40%), which is approximately two years longer than the sentence Nelson received of 262 months.[6] The district court's approach therefore resulted in a more favorable sentence for Nelson than had the court based its reduction on his life expectancy. Because the district court did not err in calculating Nelson's guideline range, we affirm.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.

---

[6] Alternatively, if the district court had used Nelson's life expectancy as a thirty-year old African-American male of 500 months, *see* National Vital Statistics Reports, Vol. 54, No. 14, April 19, 2006 at 3, http://www.cdc.gov/nchs/data/nvsr/nvsr54/ nvsr54_14.pdf (last visited June 19, 2007), it would have arrived at a sentence of 300 months, three years longer than Nelson's sentence of 262 months. In highlighting the differences in sentences that can result from using an average versus a more individualized life expectancy figure, we do not mean to endorse one approach over the other. Indeed, both are imperfect measures of life expectancy as one fails to consider a defendant's individual characteristics, and the other omits the impact of incarceration. We leave it to the Sentencing Commission to decide which method provides a superior estimate of life expectancy, or, better yet, to formulate figures that account for age, race, gender, and incarceration.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*