# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2901

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Travis Ray Burns, | * | |
| | * | |
| Appellee. | * | |
| | * | |

_____

No. 04-2933

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee. | * | |
| | * | |
| v. | * | |
| | * | |
| Travis Ray Burns, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 24, 2008
Filed: August 20, 2009

_____

Before LOKEN, Chief Judge, BRIGHT, WOLLMAN, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, GRUENDER, BENTON, and SHEPHERD, Circuit Judges, En Banc.

_____

WOLLMAN, Circuit Judge.

This case is once again before our court, this time by virtue of a remand from the Supreme Court for reconsideration of our en banc opinion in light of Gall v. United States, 128 S. Ct. 586 (2007). See Burns v. United States, 128 S. Ct. 1091 (2008). Having completed our reconsideration, we now affirm.

I.

Background

As set forth in our initial review of this case, United States v. Burns, 438 F.3d 826 (8th Cir. 2006) (Burns I), Travis Ray Burns was indicted on one count of conspiracy to manufacture and distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Burns was subject to a mandatory life sentence under the enhanced penalty provided by 21 U.S.C. § 851. Absent the § 851 enhancement, Burns faced a sentencing range of 188 to 235 months' imprisonment. In return for Burns's cooperation, the government agreed to move for a downward departure under United States Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553(e).[1]

_____

[1]Section 5K1.1 of the Guidelines provides:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a)  The appropriate reduction shall be determined by the court for

-2-

The government advised the district court[2] at sentencing that Burns had immediately admitted his involvement in the conspiracy and provided detailed information during two separate debriefing sessions regarding the several groups that were involved in manufacturing methamphetamine. Burns twice testified before the grand jury and provided information in several ongoing investigations. His cooperation assisted the government in establishing drug quantity evidence against one defendant, Brad Messerly, and he was a key witness against Victor DeFoe, which enabled the government to obtain an indictment against and secure a plea of guilty from DeFoe. The government characterized Burns's cooperation as timely, truthful, and complete, and recommended a 15 percent reduction from the otherwise applicable 360-month sentence. Burns I, 438 F.3d at 827-28.

The district court rejected the government's recommendation and imposed a sentence of 144 months' imprisonment, which reflected a 60 percent reduction from

---

reasons stated that may include, but are not limited to, consideration of the following:

    (1)    the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

    (2)    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

    (3)    the nature and extent of the defendant's assistance;

    (4)    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

    (5)    the timeliness of the defendant's assistance.

[2]The Honorable Mark W. Bennett, then Chief Judge, United States District Court for the Northern District of Iowa.

the 360-month sentence.  Id. at 828.  We set forth at length the district court's explanation of its considerations of the § 5K1.1 factors:

> I'm going to use 360 months as a starting point. In this case I specifically find under the 5K1.1 factors, factor number 5, the timeliness of the defendant's assistance, the defendant was exceptionally timely in this case.  My understanding is he started cooperating as soon as he was arrested.  To me that's exceptional timeliness.  While some defendants start that early, virtually no defendants start earlier than that . . . .

> So I find that his timeliness was exceptional and apparently started cooperating before he was advised of the impact of the United States Sentencing Guidelines, before he knew anything about how the guidelines might affect his sentence, before he exercised his Sixth Amendment right to have counsel present.  So I think in this case the fifth factor weighs very heavily in favor of the defendant . . .

> Number 4 does not apply, any injury suffered or danger of risk because I haven't heard anything about that.

> Number 3, the nature and extent of the defendant's assistance, in this case based on the representations of the assistant U.S. attorney, I find that the defendant provided every single bit of information he knew, so you couldn't—the extent of the defendant's assistance could not be greater in the sense that he provided all of the information he knew.

> Now, it's true that some defendants have greater information which leads to indictments of more people. But I don't think that's necessarily the test.  I think the test is did the defendant provide substantial assistance on everything he knew, and in this case he did.  So the defendant scores very highly on the third prong.

Defendant scores very highly on the second prong, truthfulness, completeness, and reliability of the information. There's no information that the defendant's substantial assistance was anything but a hundred percent complete, a hundred percent truthful, and a hundred percent reliable. So Mr. Burns scores very highly on the second prong.

On—the first prong is the Court's evaluation of significance and usefulness of the defendant's usefulness taking into consideration the government's evaluation of the assistance rendered. Here the government has indicated that the defendant testified twice in front of the grand jury, that he established the drug quantity on one defendant and led to the indictment and guilty plea of another defendant. I find that that was both very significant and very useful.

Now for some reason which the government refuses to disclose, they only recommend 15 percent, but they won't tell me why they only recommend 15 percent. And the government refuses to indicate how any one of the five 5K1.1 factors affect the 15 percent recommendation.

So while I do take into consideration the government's evaluation of the significance and usefulness, it's hard to put any weight on the 15 percent recommendation because the government refuses to disclose how they arrive at that recommendation.

And looking back on the other sentencings that I've had, that recommendation is in my view substantially lower than other recommendations the government has made for similarly situated defendants.

Having said all that, I have the independent right under 5K1.1 to evaluate the substantial assistance based on the 5K1 factors as I see it.

Having taken into consideration the fact that the defendant scores very, very highly on the second factor, the third factor, and the fifth factor, I'm

going to reduce the defendant's sentence substantially beyond what the government recommends in this case. That ought to come as no surprise to the government because I have a ten-year history of doing that because I just evaluate the five factors differently than—than how the government does, and the government refuses to disclose how they do it to me.

Id. at 828-29 (quoting Sent. Tr. at 12-15).

The government appealed the sentence, contending that the district court had ignored its recommendation of a 15 percent reduction and that the 60 percent reduction was excessive in light of the assistance Burns had provided. Burns cross-appealed, contending that the district court should have departed from the 188 to 235-month guideline range rather than from the 360-month presumptive life sentence. Id. at 829.

A divided panel of this court affirmed the downward departure awarded by the district court and unanimously affirmed the district court's use of the 360-month presumptive life sentence as its departure point. Id. at 831.

We granted the government's petition for en banc rehearing and vacated the panel opinion. On rehearing, we reversed the district court's departure and affirmed its starting point. United States v. Burns, 500 F.3d 756 (8th Cir. 2007) (en banc) (Burns II).

In reversing the departure, we noted that "[d]epartures under § 5K1.1 and reductions under § 3553(e) should not be untethered from the structure of the advisory guidelines." Burns II, 500 F.3d at 761 (quoting United States v. Saenz, 428 F.3d 1159, 1162 (8th Cir. 2005)). We also noted that "[b]ecause departures and reductions

based on § 5K1.1 and § 3553(e) appear contextually within a scheme designed 'to reduce unwarranted sentence disparities among similar defendants' . . . and because the Sentencing Commission's sentence adjustments for mitigating or aggravating factors fall close to the recommended guidelines, '[a]n extraordinary reduction must be supported by extraordinary circumstances.'" Id. at 761 (quoting Saenz, 428 F.3d at 1162).

We also referred to an earlier holding that "'the farther the district court varies from the presumptively reasonable guidelines range, the more compelling the justification . . . must be.'" Id. at 761 (quoting United States v. McMannus, 436 F.3d 871, 874 (8th Cir. 2006)). We concluded our summary of our previous holdings by saying, "In sum, our extraordinary reduction/extraordinary circumstances formulation requires circumstances of a strength proportional to the extent of the deviation from reductions envisioned by the guidelines's structure. . . . [U]nder this proportionality standard, Burns's ten-level and 60 percent reduction exceeds the bounds of reasonableness." Id. at 761-62.

We then went on to acknowledge that

the appropriate degree of sentencing reduction cannot be calculated with mathematical precision and that there is a range of reasonableness available to the district court in any given case. . . . It may be that we have placed too great an emphasis on numerical or percentage lines in conducting the reasonableness inquiry with respect to sentencing reductions. . . . It may also be that the use of the term "extraordinary" suggests a false dichotomy. The term as applied to reductions should not be read to suggest a true dichotomy in which the location of an imaginary line demarcating "ordinary" from "extraordinary" may be divined by a statistical inquiry. Rather than representing a term of art with unique legal significance, the "extraordinary" label more accurately serves as a convenient characterization of departures that we have

considered particularly large relative to the two to four offense level adjustments generally envisioned by the structure of the sentencing guidelines for mitigating or aggravating circumstances.

Id. at 762.

We also explained that aggregate statistics should not be the sole desideratum in weighing the strength of the circumstances justifying a given departure level, id. at 762 n.3, but that evaluation by percentages may still at times be useful. We also noted that extraordinary circumstances are infrequently found and that the circumstances that we had found to have a strength proportional to the magnitude of the departure granted to Burns could not reasonably have been considered as other than extraordinary. Id. at 763. We observed that the requirement of such circumstances furthered the goal of reducing unjustified sentencing disparities. Id.

We then reviewed the district court's weighing of Burns's assistance in the light of the § 5K1.1(a) factors and concluded the timeliness, truthfulness, and completeness, as well as the nature and extent of Burns's assistance did not justify the 60 percent reduction in Burns's sentence. Id. at 763-66. In doing so, we voiced our concern about the impact the reduction granted to Burns might have upon that required to be granted to even more reduction-worthy defendants. Id. at 766.

We concluded our review by agreeing with the district court's selection of the presumptive life sentence of 360 months as the proper guidelines departure range.

## II.

### The Court's Decision in <u>Gall</u>

In <u>Gall</u>, 128 S. Ct. 586, the Supreme Court reversed our holding in <u>Gall v. United States</u>, 446 F.3d 884 (8th Cir. 2006). In doing so, the Court jettisoned the showing of proportionality and extraordinary circumstances that we required in <u>Burns II</u> and in our other decisions to justify a departure from the appropriate guidelines range:

> In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines. We reject, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

<u>Gall</u>, 128 S. Ct. at 594-95.

The Court rejected as inconsistent with the abuse-of-discretion standard of review applicable to appellate review of all sentencing decisions the heightened standard of review resulting from the requirement of exceptional circumstances and the application of rigid mathematical formulations. <u>Id.</u> at 596. Rather, the sentencing court's latitude in determining the extent of variance from a guidelines sentence is cabined by the requirement "that a major departure should be supported by a more significant justification than a minor one" and by the requirement that the chosen sentence be adequately explained so as to allow for meaningful appellate review and to promote the perception of fair sentencing. <u>Id.</u> at 597.

Under the abuse of discretion standard of review applicable once a sentence has been determined to be free from any significant procedural error, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."  Id.

III.

Issues on Remand

Prior to hearing argument on remand, we asked the parties to submit supplemental briefs on the following issues:

1.  Did Gall v. United States, 128 S. Ct. 586 (2007), abrogate or overrule this court's prior decision "that a reduction in sentence based on [18 U.S.C.] Section 3553(e) may be based only on assistance-related considerations," United States v. Williams, 474 F.3d 1130, 1131 (8th Cir. 2007)?

2.  To what extent does the Gall standard of appellate review apply to the review of a district court sentence under 18 U.S.C. Section 3553(e)?

3.  What obligation does the government have to apprise the district court as to the bases underlying its recommendation of a particular downward departure under 18 U.S.C. Section 3553(e)?

We will treat these issues in different order, addressing the last issue first.

## IV.

## Government's Duty to Disclose

We touched on this issue in our en banc decision, rejecting the government's contention that the district court failed to give substantial weight to the government's evaluation of the assistance that Burns had provided. Burns II, 500 F.3d at 765 n.7. We pointed out that although the commentary to § 5K1.1 requires the district court to give substantial weight to the government's evaluation of the extent of the defendant's assistance, the "government's recommendation is not controlling, however, and it is the district court's responsibility to determine an appropriate reduction." Id. (quoting United States v. Haack, 403 F.3d 997, 1005 (8th Cir. 2005)). We concluded by saying that we would "not consider final departures substantially at variance with unexplained government recommendations to be de facto proof of discretionary abuse." Id.

Turning to the specific question on which we requested supplemental briefing, we conclude that the government is under no obligation to apprise the district court with respect to the bases underlying its recommendation of a particular downward departure under § 3553(e) in the absence of a showing that its recommendation was based upon an unconstitutional motivation such as the defendant's race or religion. Cf. United States v. Armstrong, 517 U.S. 456, 463-64 (1996); United States v. Wade, 504 U.S. 181, 185-86 (1992); United States v. Moeller, 383 F.3d 710, 712 (8th Cir. 2004). As the Court noted in Armstrong, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws. They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" 517 U.S. at 464 (citations omitted). In holding that the district court had erred in compelling the government to file a § 3553(e) motion, we stated that "it is not the sentencing court's function to look behind the prosecutor's substantial assistance

-11-

decisionmaking in this fashion. The prosecutor's evaluation of the quantity and quality of a defendant's assistance, like a prosecutor's decision to prosecute, 'is particularly ill-suited to judicial review.'" Moeller, 383 F.3d at 713 (citation omitted).

We conclude that the reasoning set forth in those cases applies with equal force to the question before us in this case. There has been no allegation, much less a showing, of any unconstitutional motive on the government's part in declining to go beyond the reasons it provided to the district court in explaining its reasons for its 15 percent departure recommendation. Whether elaborating more fully on the reasons for its recommendation might have been a more prudent course to follow was for the government to decide.

V.

Williams Issue

We held in United States v. Williams, 474 F.3d 1130-31 (8th Cir. 2007), that after reducing a sentence based on the factors set forth in 18 U.S.C. § 3553(e), a district court may not reduce the sentence further based on factors, other than assistance, set forth in 18 U.S.C. § 3553(a): "Where a court has authority to sentence below a statutory minimum only by virtue of a government motion under § 3553(e), the reduction below the statutory minimum must be based exclusively on assistance-related considerations." Id. at 1130-31. We pointed out that the text of § 3553(e) states that the section provides only "[l]imited authority to impose a sentence below a statutory minimum." Id. at 1131. Further, the body of § 3553(e) spells out that the district court's authority is limited to imposing a sentence below the statutory minimum only "so as to reflect a defendant's substantial assistance." Id. at 1132 (quoting § 3553(e)). A district court would thus exceed the limited authority granted

-12-

by § 3553(e) if it imposed a sentence below the statutory minimum based in part upon the history and characteristics of the defendant.  See § 3553(a)(1).  Id.[3]

We have revisited the holding in Williams post-Gall and have concluded that Gall has not affected the limitations imposed by 18 U.S.C. § 3553(e) upon the district court's authority to impose a sentence below the statutory minimum.  See United States v. Johnson, 517 F.3d 1020 (8th Cir. 2008); United States v. Freemont, 513 F.3d 884 (8th Cir. 2008).  We adhere to the holdings in those cases.[4]  As we read Gall, the Court there was concerned about the heightened standard of review that appellate courts had imposed through the application of concepts such as extraordinary/exceptional circumstances, departure percentages, proportionality review, and the like and said nothing that would indicate that district courts are not bound by the strictures set forth in § 3553(e).

VI.

Post-Gall Review of § 3553(e) Departures

We turn then to the principal issue before us on remand, which is whether the standard of appellate review laid down in Gall applies to our review of a sentence imposed under the provisions of 18 U.S.C. § 3553(e).  We conclude that it does.

---

[3]In United States v. Coyle, 506 F.3d 680 (8th Cir. 2007), we held that a district court may rely upon the § 3553(a) factors to fashion a sentence above the statutory minimum.

[4]We note that the Tenth Circuit found the reasoning in Williams to be persuasive.  See United States v. A.B., 529 F.3d 1275 (10th Cir. 2008).

-13-

The Court in Gall noted the district court's superior position to find and judge the impact of facts under § 3553(a), the district court's opportunity to see and hear the evidence and thus make credibility determinations, and the district court's greater access to and familiarity with the individual case and the individual defendant. Gall, 128 S. Ct. at 597-98. The court also noted the district court's "institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do." Id. at 598 (quoting Koon v. United States, 518 U.S. 81, 98 (1996)).

The Court went on to note that we had given virtually no deference to the district court's decision that the § 3553(a) factors justified a significant variance in Gall's case, saying that although we had correctly stated the appropriate standard of review, we "engaged in an analysis that more closely resembled *de novo* review of the facts presented and determined that, in [our] view, the degree of variance was not warranted." Id. at 600.[5] The Court held that "while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review *all* sentences – whether inside, just outside, or significantly outside the Guidelines range – under a deferential abuse-of discretion standard." Id. at 591 (emphasis added). See United States v. Livesay, 525 F.3d 1081, 1092 (11th Cir. 2008) (reviewing a U.S.S.G. § 5K1.1 departure under the Gall standard of review).

---

[5]We have observed on more than one occasion that the pre-Gall articulation of our standard of review may not have been much different from that expressed in Gall: "One may question whether the standard articulated in this court's pre-Gall proportionality review was substantively different from the Supreme Court's direction to district courts in Gall that 'a major departure should be supported by a more significant justification than a minor one.'" United States v. Lee, 553 F.3d 598, 602 (8th Cir. 2009) (quoting Gall, 128 S. Ct. at 597). See also United States v. Marron-Garcia, 555 F.3d 1040, 1041 (8th Cir. 2009) (quoting Lee).

Our recent en banc opinion recounted the limitations imposed by <u>Gall</u> upon the scope of our review of sentences, noting the Supreme Court's explicit rejection of the use of the concepts extraordinary circumstances and rigid mathematical formulas. <u>United States v. Feemster</u>, No. 06-2059, slip op. at 8-9 (8th Cir. July 13, 2009) (en banc).

We see no basis upon which to say that the Court's admonitions regarding the highly deferential view that appellate courts should take towards a district court's appraisal of the § 3553(a) factors should not also apply to the district court's findings and determinations regarding the five § 5K1.1 factors as it calculates the substantiality of the defendant's assistance when ruling on the government's motion for a reduction under § 3553(e). The institutional advantage that the Court spoke of in <u>Koon</u> and <u>Gall</u> applies with equal force in a § 3553(e) case. We appellate judges can claim no knowledge superior to that of the district court in making the evaluations and findings required by § 5K1.1. Accordingly, our review of the significance and usefulness of a defendant's assistance should accord the district court's assessment of that assistance the institutional deference it deserves. True, the district court must take into account the government's evaluation of the assistance rendered, <u>see</u> § 5K1.1(a)(1), but beyond that it is for the district court to bring to bear its special vantage-point competence in making the findings and judgments that § 5K1.1 requires of it. Likewise, it is for the district court in the first instance to be concerned about the impact that a reduction in a given case might have in other potential substantial assistance cases.

To say that this is not to say that we no longer have a role to play in reviewing the reasonableness of a § 3553(e) sentence reduction. There must be some limits to the district court's discretion, for surely a district court's willy nilly mood-of-the-day reduction should not be insulated from appellate review, and there well may be cases in which a reduction so far exceeds the justification offered in support thereof that it must be set aside.

The question then is whether, after putting aside all notions of exceptional/extraordinary circumstances, departure percentages, proportionality review, and similar data-based standards of review, the reduction granted to Burns is substantively unreasonable. We conclude that it is not. That the reduction was a major one is beyond dispute. Whether it was supported by a sufficiently significant justification is a closer question. After giving the district court's explanations, which we find to be adequate for meaningful appellate review, the due deference that <u>Gall</u> commands, we conclude that it was. The sentence, although perhaps not that which we might have imposed, finds support in the district court's assessment of Burns's assistance. As revealed by the district court's findings set forth at length above, that assessment was not capricious, whimsical, impressionistic, or ire-driven. We conclude that the sentence does not reflect an abuse of the district court's discretion, and it is therefore affirmed.

## Conclusion

We reaffirm our earlier holding that the district court correctly used the 360-month presumptive life sentence as its departure point in determining the reduction. Accordingly, the district court's judgment is affirmed in its entirety.

BRIGHT, Circuit Judge, with whom Judge Bye joins in Part I only, concurring.

I concur in the result, but write separately to further explain my views.

## I.

Today, the court definitively concludes that the days of "extraordinary/ exceptional circumstances, departure percentages, proportionality review, and the

-16-

like," *ante*, at 13, have ended. This result, commanded by the Supreme Court's decisions in a line of cases that culminated in *Gall v. United States*, 128 S. Ct. 586 (2007), puts the discretion at sentencing in the district court, just where it should be, with due regard for the guidelines and the statutes relating to the goals of sentencing. Appellate courts are not sentencing courts.

The dissent makes essentially two arguments. First, that *Gall* does not apply to sentencing reductions under § 3553(e) because there are no Sixth Amendment concerns with such reductions. Second, the dissent repeatedly asserts that this court, in *Burns II*, adopted the same proportional review that the court rejects today. Both arguments miss the point.

First, the dissent's focus on the perceived distinctions between § 3553(a) (providing a list of relevant sentencing factors) and § 3553(e) (providing that a district court has authority to sentence below the mandatory minimum) lead it to overlook the point of *Gall* altogether. As I read *Gall*, the opinion is at least as much about district-court discretion as it is about the Sixth Amendment. The high court could not have been more clear: "the abuse-of-discretion standard of review applies to appellate review of *all* sentencing decisions." *Gall*, 128 S. Ct. at 596 (emphasis added). I am unaware of any Supreme Court authority to the contrary. *Gall*, therefore, applies with equal force to sentencing proceedings under both § 3553(a) and § 3553(e).

The dissent also contends that *Gall* "does not justify wholesale abandonment of the approach endorsed by the en banc court in *Burns II*," *post*, at 1. But the circumstance that this court may have endorsed an improper standard is of no moment. For example, the Supreme Court has reversed, vacated, or abrogated decisions of this court and those of other circuit courts in a series of recent cases relating to sentencing and criminal law. I have the highest regard for my distinguished colleagues who joined *Burns II*. *Burns II* represented the rule in this circuit until the judgment was

vacated by the Supreme Court and remanded for reconsideration in light of *Gall*. When the high court vacated the judgment and remanded *Burns II*, its message seems clear: the discretion belongs with the district court.

A mandatory Sentencing Guidelines scheme ended with *Booker*. Today, this court recognizes that the role of federal appellate review of sentences has drastically changed with *Gall*. Thus begins a new era in sentencing, hopefully creating fairer sentences than many meted out under the mandatory guidelines regime. But let me add a word to district judges. Discretion is not unfettered and must be supported by good reasons for sentencing either above or below the now advisory guidelines or in determining the proper sentence below the statutory minimum for an offender's "substantial assistance."

## II.

Although I agree with the majority's application of the *Gall* standard to our review of § 3553(e) reductions, I reject the ruling that the government is "under no obligation to apprise the district court with respect to the bases underlying its recommendation of a particular downward departure under § 3553(e) in absence of a showing that its recommendation was based upon an unconstitutional motivation such as the defendant's race or religion," *ante*, at 11-12.

I stand by my dissent on this point in *Burns II*, when I wrote that the government is obliged to explain the basis for its recommendation to the district court, and I will not repeat that extensive explanation of my views here. *See United States v. Burns*, 500 F.3d 756, 770-77 (8th Cir. 2007) (Bright, J., dissenting). I will, however, add two brief responses to the majority's analysis of this issue.

First, the cases cited by the court for the proposition that the prosecutor has no duty to explain the basis for the departure recommendation are not directly on point. *See United States v. Armstrong*, 517 U.S. 456, 463-64 (1996); *United States v. Wade*, 504 U.S. 181, 185-86 (1992); *United States v. Moeller*, 383 F.3d 710, 712 (8th Cir. 2004). They stand merely for the unassailable premise that prosecutors, in contexts other than the one here, have "broad discretion" to enforce our Nation's criminal laws. *Armstrong*, 517 U.S. at 464 (internal quotation marks omitted). This premise leads the majority to conclude, by way of analogy, that the instant prosecutor had no obligation to make the district court aware of the government's justification for the recommended reduction.

The analogy is flawed. Enforcement of the criminal statutes is not the issue; the question is which office, the prosecutor or the district court, should play the primary role at sentencing. After a period of upheaval and change in the area of sentencing, the answer is crystal clear: sentencing is for *district courts* and the discretion is to be exercised by them.

Second, the rule stated today suffers from another, potentially more serious, fault. Information and experience are the strongest bulwarks against discretion's slide into caprice. I have no doubt that our district courts are experienced. The question is whether they will have adequate information to properly exercise their discretion. This is why I strongly disagree with a process that inherently restricts the efficacy of judicial discretion by encouraging the government to withhold crucial information from the district courts.

For these reasons, and those explained in my dissent in *Burns II*, I reject the majority's conclusion that the prosecutor has no obligation to inform the district court of the rationale behind a reduction recommendation.

III.

The majority adheres to the panel decision in *United States v. Williams*, which held that when a district court has authority to sentence below a statutory minimum only by virtue of a government motion under § 3553(e), "the reduction below the statutory minimum must be based exclusively on assistance-related considerations." 474 F.3d 1130, 1131 (8th Cir. 2007).

I recognize that there is nothing in *Gall* that directly overrules or otherwise abrogates *Williams*, meaning that *Williams* remains good law in this circuit. But if I were writing on a clean slate, I would permit a district court to consider all factors, including those in § 3553(a), when determining whether, and to what extent, a sentence below the applicable statutory minimum is necessary.

COLLOTON, Circuit Judge, with whom LOKEN, Chief Judge, and RILEY and GRUENDER, Circuit Judges, join, dissenting.

In a series of cases beginning with *United States v. Haack*, 403 F.3d 997 (8th Cir. 2005), *United States v. Dalton*, 404 F.3d 1029 (8th Cir. 2005), and *United States v. Pizano*, 403 F.3d 991 (8th Cir 2005), this court was called upon to decide whether a district court, acting under 18 U.S.C. § 3553(e), abused its discretion by granting unreasonable sentence reductions below a statutory minimum term based on a defendant's substantial assistance. These decisions, culminating in *United States v. Burns*, 500 F.3d 756 (8th Cir. 2007) (en banc) ("*Burns II*"), *vacated*, 128 S. Ct. 1091 (2008), developed a sound methodology for conducting appellate review of § 3553(e) reductions.

The Supreme Court's decision in *Gall v. United States*, 128 S. Ct. 586 (2007), concerning appellate review of sentencing decisions under a different statutory

subsection, 18 U.S.C. § 3553(a), does not justify wholesale abandonment of the approach endorsed by the en banc court in *Burns II*. *Gall* implemented the constitutionally-based holding of *United States v. Booker*, 543 U.S. 220 (2005), which declared the sentencing guidelines effectively advisory in all cases, and established appellate review for "reasonableness." But whereas the deferential appellate review under *Gall* and *Booker* must focus on whether a sentence is reasonable in light of *all* of the undifferentiated § 3553(a) factors *taken as a whole*, the sole purpose of appellate review in a § 3553(e) case is to determine whether the district court reduced a sentence below the statutory minimum "to an unreasonable degree" based on the defendant's level of assistance. 18 U.S.C. § 3742(f)(2). Review of sentence reductions under § 3553(e), moreover, is unencumbered by the Sixth Amendment concerns that underlay *Booker* and *Gall*. Therefore, *Gall* does not dictate a dramatic change in our analysis of § 3553(e) cases, and substantially for the reasons discussed by the court in *Burns II*, I would reverse the judgment of the district court and remand for further proceedings.

I.

A.

Section 3553(e) provides:

> **Limited authority to impose a sentence below a statutory minimum**.–Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

The court today reaffirms that § 3553(e) grants limited authority for a district court to reduce a sentence based *only* on a defendant's substantial assistance. A government motion under § 3553(e) does not authorize a sentencing court to impose a more lenient sentence based on the factors set forth in § 3553(a). *See United States v. Williams*, 474 F.3d 1130, 1130-31 (8th Cir. 2007); *see also United States v. Pearce*, 191 F.3d 488, 494-95 (4th Cir. 1999) (concluding that the district court improperly based its decision on factors unrelated to the defendant's assistance to the government, as evidenced by the court's permissive response to defense counsel's argument invoking the "'good ole days' when judges did not have 'to worry about guidelines and sentencing commissions and things like that'"); *cf.* Stephanos Bibas, *Regulating Local Variations in Federal Sentencing*, 58 Stan. L. Rev. 137, 150 (2005) ("[J]udges in some districts resent what they view as unduly severe Guidelines sentences. These judges are happy to exploit substantial assistance departures to escape the Guidelines' strictures. Other judges, however, seek to peg their departures to the Guidelines, offering proportionate and more modest discounts.") (footnote omitted).

Our decisions from *Haack* through *Burns II* established that a reduction under § 3553(e) based on substantial assistance should not be untethered from the structure of the sentencing guidelines, because the reductions take place in the context of a statutory plan that is designed to promote uniformity and proportionality in sentencing. We explained that the amount of the reduction should be proportional to the degree of assistance provided by the cooperating defendant. We observed that the guidelines provide for adjustments of two, three, and four offense levels to account for most aggravating and mitigating circumstances, *United States v. Saenz*, 428 F.3d 1159, 1162 (8th Cir. 2005), and reasoned that when a court grants a reduction that substantially exceeds these benchmarks, it should identify exceptional facts to justify the larger reduction. *See United States v. Jensen*, 493 F.3d 997, 1001 (8th Cir. 2007). In other words, a major reduction should be supported by a more significant justification than a minor one.

This methodology was well grounded in decisions of the Supreme Court and other circuits. In *Williams v. United States*, 503 U.S. 193 (1992), the Court explained that a court of appeals should affirm a departure from an otherwise mandatory sentence if it is "satisfied that the departure is reasonable" under 18 U.S.C. § 3742(f)(2). *Id.* at 203. "The reasonableness determination looks to the amount and extent of the departure in light of the grounds for departing." *Id.* The reasons stated by the district court, therefore, must be "sufficient to justify the magnitude of the departure." *Id.* at 204. Applying *Williams* in the context of substantial assistance, the Fourth Circuit in *Pearce* considered the nature, extent, and significance of a cooperating defendant's assistance to the government, and found that it was insufficient to support the magnitude of the departure granted by the district court. 191 F.3d at 495. The Seventh Circuit in *United States v. Thomas*, 930 F.2d 526 (7th Cir. 1991), *superseded on other grounds by* USSG § 5H1.6 (1991), declared that substantial-assistance departures must be "linked to the structure of the guidelines." *Id.* at 530. The court recognized that "weighing the impact of any given factor on the quality of the defendant's cooperation is an imprecise art," but cautioned that "'departures of more than two levels should be explained with the care commensurate with their exceptional quality.'" *Id.* at 531 (quoting *United States v. Ferra*, 900 F.2d 1057, 1064 (7th Cir. 1990)).

B.

Our cases under § 3553(e) before *Gall* carefully analyzed whether the district court's stated reasons justified the magnitude of its reductions. In *Haack*, the court was left with the "firm impression that the district court reached outside its permissible range of choice and abused its discretion by departing downward to an unreasonable degree." 403 F.3d at 1004 (internal quotation omitted). We reversed a seven-level reduction as unreasonably large, after observing that Haack's cooperation consisted of providing information that led to the issuance of a search warrant at a residence, standing ready to testify against the occupants if needed, and providing information against suspects already under indictment or known to law

enforcement.  *Id.* at 1005.  A reduction of that extent, the court explained, "leaves little room for greater departures for defendants who actually participate in controlled buys, wear wires, give grand jury and trial testimony, or are subjected to significant risk of injury or death to themselves or their family."  *Id.* at 1005-06.  In *Dalton*, the court was left with "the definite and firm conviction" that the district court "exceeded the permissible bounds of its discretion," 404 F.3d at 1034, when it granted a 12-level reduction to a defendant whose cooperation was "limited to proffering information about a handful of people and serving only as a corroborative witness before a grand jury against two of them."  *Id*. at 1033.

In *Saenz*, we held that the district court's 11-level reduction was excessive and unreasonable, where the nature and extent of the defendant's assistance was "relatively limited," the significance and usefulness of her assistance was "relatively modest," and she suffered no apparent danger or risk of injury.  428 F.3d at 1163-65. We also found unreasonable the district court's conclusion that "any defendant who is timely, completely truthful, complete, reliable, and tells the government everything they need to know deserves more than 50 percent in reduction," (*i.e.*, more than ten offense levels in the *Saenz* case), without regard to the nature and extent of the defendant's assistance, the significance and usefulness of the assistance, or any danger or risk of injury endured by the cooperating defendant.  *Id.* at 1162-63 (internal quotation omitted).

In *United States v. Coyle*, 429 F.3d 1192 (8th Cir. 2005), we reversed as unreasonably large a 14-level reduction, which the district court characterized as "whopping," *id.* at 1193 (internal quotation omitted), on the view that a reduction of that magnitude should be reserved for cooperating defendants who provide a greater degree of assistance.  *Id.* at 1194.  We observed that "[t]here undoubtedly are defendants who provide long-term undercover assistance that is greater than the two controlled transactions involved here, who assist with the investigation of multi-member conspiracies rather than the single defendant prosecuted in this matter, whose cooperation results in the apprehension of particularly dangerous offenders or

'kingpins,' and who suffer a more tangible risk of injury or actual harm as a result of their cooperation with the government." *Id.* We were loathe to conclude that a defendant providing these greater levels of assistance must be awarded an even greater reduction (*i.e.*, 15 or more offense levels) to avoid unwarranted disparities. *Id.*

On the other hand, we affirmed as reasonable the district court's 12-level reduction in *Pizano*, where the defendant provided timely and truthful cooperation, was a "key witness" against two co-conspirators, gave testimony that could be instrumental in seizing assets from a money laundering scheme, provided debriefings and grand jury testimony regarding both a close family member and a "major figure" in the conspiracy, and put himself and his family at risk of harm from "dangerous people" when he testified. 403 F.3d at 995-96. In *United States v. Pepper*, 486 F.3d 408 (8th Cir. 2007) ("*Pepper II*"), after first remanding based on consideration of an improper factor, *United States v. Pepper*, 412 F.3d 995, 999 (8th Cir. 2005) ("*Pepper I*"), we held that the district court did not abuse its discretion in reducing the defendant's sentence by five offense levels based on "timely, truthful, honest, helpful, and important" assistance that the district court described as "pedestrian or average." *Pepper II*, 486 F.3d at 411 (internal quotation omitted). In *Jensen*, we affirmed the district court's six-level reduction for a defendant who was timely, complete, and truthful, was debriefed extensively by law enforcement agents concerning a substantial methamphetamine conspiracy, served as a prospective witness in a sentencing proceeding that ultimately was resolved by stipulation, identified a major figure in the drug conspiracy, and testified in the grand jury in support of a probable future indictment. 493 F.3d at 1001.

In *Burns II*, the en banc court applied the methodology developed in these cases and concluded that the district court's ten-level reduction exceeded the bounds of reasonableness. 500 F.3d at 762. The court held that to affirm such a large reduction based on the assistance rendered by the defendant "would frustrate our goal of preventing departures from becoming untethered from the structure of the guidelines and would not reflect any meaningful sense of proportionality." *Id.* at 766.

-25-

These decisions recognized that we could not say "with mathematical precision" how great a reduction should be granted for particular degrees of cooperation, *Burns II*, 500 F.3d at 762; *Haack*, 403 F.3d at 1005, but they identified ranges of reasonableness and outer limits on the district court's exercise of discretion. The cases fostered a decisional process in which determinations about substantial-assistance reductions were linked to the structure of the guidelines, and were not motivated by improper factors such as hostility to mandatory sentencing, *Haack*, 403 F.3d at 1006, or a desire to sentence a defendant to "the shortest possible term of imprisonment" that would allow for participation in a prison drug treatment program. *Pepper I*, 412 F.3d at 999. The opinions strived to ensure that the magnitude of reductions were proportional to the circumstances that justified them, without micro-managing the district court's sentencing decisions. As we said in *Coyle*, for example, "[t]here is a good deal of room between the government's modest recommendation [for a reduction of less than two full offense levels] and the district court's generous departure [of 14 levels] to recognize this defendant's assistance without at the same time skewing the degree of reduction that must be granted to future defendants whose performance on the continuum of substantial assistance deserves more credit than Coyle's." 429 F.3d at 1194.

C.

During the same time period, this court began to implement the Supreme Court's decision in *Booker*, which held that the application of the mandatory sentencing guidelines violated the Sixth Amendment right to jury trial in certain circumstances, and declared the guidelines "effectively advisory" in all cases as a remedy. 543 U.S. at 245. The Court held that sentencing courts should consider and take into account the sentencing guideline range, but that the district courts should impose sentence based on the factors set forth in 18 U.S.C. § 3553(a) as a whole. *Id. Booker* directed the courts of appeals to review sentences imposed by the district courts to determine whether they are "unreasonable with regard to § 3553(a)." *Id.* at 261.

Like some other circuits, our court interpreted *Booker* and its "reasonableness" requirement to call for what came to be described as "proportionality review" of sentences imposed under the new advisory regime. Under this approach, when a district court imposed a non-guideline sentence, we reviewed to determine whether the district court's stated justification for varying from the advisory guidelines was "proportional to the extent of the difference between the advisory range and the sentence imposed." *United States v. Gall*, 446 F.3d 884, 889 (8th Cir. 2006) (internal quotations omitted), *rev'd*, 128 S. Ct. 586 (2007).

In *Gall*, the Supreme Court held that an appellate rule requiring a proportional justification for a variance from the advisory guideline range was impermissible for a specific reason: it was inconsistent with the remedial opinion in *Booker*. 128 S. Ct. at 595. The Court established that the proper measure of "reasonableness" in a § 3553(a) case is not whether the *variance* from the advisory guideline range is reasonable, but whether the *ultimate sentence* is reasonable in light of *all* of the § 3553(a) factors *taken as a whole*. *Id.* at 597. Proportionality review under § 3553(a), the Court explained, came "too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range." *Id.* at 595. Because the advisory range is sometimes based on findings made by the sentencing judge, proportionality review would mean that some sentences would be "upheld only on the basis of additional judge-found facts," *id.* at 602 (Scalia, J., concurring), and these sentences would violate the Sixth Amendment. *See Rita v. United States*, 551 U.S. 338, 371-72 (2007) (Scalia, J., concurring in judgment). By rejecting proportionality review and applying a deferential abuse-of-discretion standard of review, the Court drastically curtailed review for substantive reasonableness, and thereby minimized the number of Sixth Amendment violations that will occur under the advisory system.

II.

A.

The Supreme Court remanded this case for further consideration in light of *Gall*.[6] The analysis in *Gall* concerning review of a sentence imposed under § 3553(a), however, does not dictate that this court abandon its proportionality review of sentence reductions under § 3553(e). *Booker* has no application to § 3553(e). As the court reaffirms today, a sentencing judge is forbidden to rely on the § 3553(a) factors to reduce a sentence when acting on a government motion under § 3553(e). *Ante*, at 13. Unlike reasonableness review under § 3553(a), where the court of appeals is charged with considering the reasonableness of a sentence with regard to *all* of the factors in § 3553(a) *taken as a whole*, the exclusive purpose of reasonableness review under § 3553(e) is to determine whether the degree of the reduction from the statutory minimum sentence is reasonable. *Gall* held in the context of § 3553(a) that the court of appeals does not merely evaluate the reasonableness of a variance between the advisory guideline range and the final sentence. But the *only* responsibility of the court of appeals in a § 3553(e) case is to determine whether the departure below the statutory minimum is "to an unreasonable degree." 18 U.S.C. § 3742(f)(2). There are no other factors at play.

The district court's ruling on a substantial-assistance motion under § 3553(e) also poses no constitutional concerns under the Sixth Amendment. The only possible effect of a § 3553(e) motion is to reduce the defendant's sentence. As with a sentence

[6]The Court's summary reconsideration order does "not amount to a final determination on the merits." *Henry v. City of Rock Hill*, 376 U.S. 776, 777 (1964) (per curiam). According to a leading treatise, "[i]t seems fairly clear that the Court does not treat the summary reconsideration order as the functional equivalent of a summary reversal order and that the lower court is being told merely to reconsider the entire case in light of the intervening precedent – which may or may not compel a different result." Eugene Gressman, et al., *Supreme Court Practice* 349 (9th ed. 2007).

reduction proceeding under 18 U.S.C. § 3582(c), there is no potential that judicial factfinding conducted in resolving a § 3553(e) motion will increase the statutory maximum punishment. *See United States v. Starks*, 551 F.3d 839, 842 (8th Cir.), *cert. denied*, 129 S. Ct. 2746 (2009). Accordingly, there is no constitutional difficulty with an appellate rule that requires a district court to identify justifications for a sentence reduction under § 3553(e) that are proportional to the magnitude of the reduction. The Court in *Booker* unanimously recognized that Congress in the Sentencing Reform Act sought to achieve uniformity in sentencing, and that the *Booker* remedy, with its wide discretion for sentencing judges, was *contrary* to what Congress desired. *See Booker*, 543 U.S. at 246-47, 250, 253, 263-64; *id.* at 292-300 (Stevens, J., dissenting); *id.* at 303-06 (Scalia, J., dissenting). With no Sixth Amendment concerns under § 3553(e), there is no reason to abandon a framework that is designed to keep sentence reductions tethered to the structure of the guideline system that Congress created.

*Gall* applied an abuse-of-discretion standard of review to a district court's sentencing decisions, but this is nothing new. Well before *Gall*, in *Koon v. United States*, 518 U.S. 81, 96-100 (1996), the Supreme Court applied an abuse of discretion standard to a district court's departure from an otherwise mandatory sentence, and our § 3553(e) decisions from *Haack* to *Burns II* likewise conducted abuse of discretion review. *See, e.g., Burns II*, 500 F.3d at 760; *Haack*, 403 F.3d at 1003-04. Appellate review under this standard is not an "empty exercise," and "[t]he deference that is due depends on the nature of the question presented." *Koon*, 518 U.S. at 98. "'Abuse of discretion' may have different meanings in different contexts; the deference given a particular decision depends upon 'the reason why that category or type of decision is committed to the trial court's discretion in the first instance.'" *Gasperini v. Ctr. for Humanities, Inc.*, 149 F.3d 137, 141 (2d Cir. 1998) (quoting Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 764 (1982)).

Under § 3553(a), due to a confluence of circumstances, a district court's discretion is near its zenith. First, there is almost "no law to apply." Friendly, *supra*, at 765. The district court has discretion to consider virtually unlimited information,

*see* 18 U.S.C. § 3661; *Williams v. New York*, 337 U.S. 241, 247 (1949), and to apply the undifferentiated factors under § 3553(a) as it sees fit. After *Gall* and *Kimbrough v. United States*, 128 S. Ct. 558 (2007), this court has identified no basis in substantive law for a court of appeals to prefer one district court's sentencing practices under § 3553(a) over those of another. *See United States v. Feemster*, No. 06-2059, 2009 WL 2003970, at *5 n.4, *7 (8th Cir. July 13, 2009) (en banc). As long as the sentencing judge does not act arbitrarily or shock the conscience, *see Rita*, 551 U.S. at 365 (Stevens, J., concurring) (rejecting "purely procedural review," because "[a]fter all, a district judge who gives harsh sentences to Yankees fans and lenient sentences to Red Sox fans would not be acting reasonably even if her procedural rulings were impeccable"), there seems to be no discernible legal reason for a court of appeals to declare unreasonable the decision of a judge who imposes sentence under § 3553(a) based on the individual characteristics and circumstances of a particular defendant.[7] Second, the highly deferential standard of review adopted in *Gall* is influenced by the constitutional problems that would result from any more rigorous appellate review. Given that the basis for invalidating the mandatory guidelines in the first place was the Sixth Amendment, the standard of review adopted by the Court presumably is designed to ameliorate Sixth Amendment violations as much as possible, by giving the district courts free rein to apply the § 3553(a) factors. *See Gall*, 128 S. Ct. at 602 (Scalia, J., concurring). Third, the district court's "institutional advantages" over the court of appeals are greatest when the sentencing court is engaged in a "unique study

---

[7]The Supreme Court has reserved judgment on whether "closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect § 3553(a) considerations' even in a mine-run case." *Kimbrough v. United States*, 128 S. Ct. 558, 575 (2007) (quoting *Rita*, 551 U.S. at 351). The Court has not yet said, however, that a sentencing court is required to give any weight to the advisory guidelines. *See id.* at 576-77 (Scalia, J., concurring); *Booker*, 543 U.S. at 245, 264 (explaining that a district court must "consider" the advisory guidelines and "take them into account"); *id.* at 305-06 (Scalia, J., dissenting) ("If the majority . . . thought the Guidelines not only had to be 'considered' . . . but had generally to be followed . . . its opinion would surely say so.").

in . . . human failings," *Gall*, 128 S. Ct. at 598 (internal quotation omitted), informed by all of the factors set forth in § 3553(a), including even "insights not conveyed by the record." *Id.* at 597.

In a § 3553(e) case, however, there is a "principle of preference" that is absent under § 3553(a). *See* Friendly, *supra*, at 768. It is entirely appropriate for a court of appeals to prefer a proportionate reduction from the mandatory minimum over a disproportionate one. The reasons given by the district court must be "sufficient to justify the magnitude of the departure," *Williams*, 503 U.S. at 204, and an evaluation of sufficiency requires the court of appeals to consider whether the magnitude of the assistance is proportional to the magnitude of the reduction. No constitutional difficulties arise from this rule of appellate review under § 3553(e). And the institutional advantages of the district court cited by the Court in *Gall* are muted. A sentence reduction under § 3553(e) does not involve the same wide-ranging, highly personal inquiry that a district court must undertake pursuant to § 3553(a). There is one discrete issue: the degree of reduction warranted by the defendant's assistance to the government. With respect to that decision, the governing policy statement of the Sentencing Commission establishes that the sentencing court owes deference to the institutional advantage of another party – the government, which sees more cooperating defendants than any single district judge, and which is best positioned to know the value of a defendant's cooperation in law enforcement investigations. *See* USSG § 5K1.1(a)(1) & comment. (n.3) ("Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain."). The court of appeals must ensure that the district court adheres to that principle of preference as well.

In discussing the standard of review in *Gall*, the Supreme Court concluded that the appellate review conducted by this court with respect to a decision under § 3553(a) "more closely resembled *de novo* review." 128 S. Ct. at 600. It cannot fairly be said, however, that this court has applied the equivalent of *de novo* review to sentence reductions under § 3553(e). We affirmed a five-level reduction for "pedestrian"

-31-

assistance in *Pepper II*, stating that it was a "close call," but that we could not say the district court abused its discretion. 486 F.3d at 411 (internal quotation omitted). In *Jensen*, we rejected the government's challenge to a six-level reduction, saying that while the reduction was "generous, and at or near the limit of what we could view as reasonable based on this level of assistance," the district court did not abuse its discretion. 493 F.3d at 1001. And we affirmed a 12-level reduction in *Pizano*, saying that while the extent of the reduction was "well below the government's recommendation," it was not an abuse of discretion. 403 F.3d at 997. The discussion in these opinions does not suggest that the court of appeals reached agreement with the district court under a *de novo* standard of review. Rather, the court recognized that a range of discretion is available to the district court, and affirmed sentences even though "the appellate court might reasonably have concluded that a different sentence was appropriate." *Gall*, 128 S. Ct. at 597. The mere fact that other sentence reductions under § 3553(e) were reversed as unreasonably large and an abuse of discretion does not mean that the court applied *de novo* review in those cases either.

B.

On this understanding of *Gall*, and of the distinctions between § 3553(a) and § 3553(e), the en banc decision in *Burns II* was essentially sound.[8] We explained in *Burns II* that the district court justified its ten-level reduction by emphasizing the

---

[8]*Burns II* did include some remnants of a mathematical percentage-based approach to evaluating reductions, which *Gall* rejected, 128 S. Ct. at 595-96, but those aspects of the opinion in *Burns II* do not affect the ultimate conclusion. Even before *Gall*, we had recognized the shortcomings of considering reductions in terms of percentages, and turned to a focus on offense levels as a method more in keeping with the structure and theory of the sentencing guidelines. *Burns II*, 500 F.3d at 762; *Jensen*, 493 F.3d at 1000-01; *see also United States v. Chettiar*, 501 F.3d 854, 860 (8th Cir. 2007); *United States v. Maloney*, 466 F.3d 663, 668 (8th Cir. 2006). Nothing in *Gall* suggests that reference to the Guidelines' sentencing table and the number of offense levels traversed by a reduction is an inappropriate means to distinguish a "major departure" from a "minor one." *Gall*, 128 S. Ct. at 597.

timeliness of Burns's assistance, the truthfulness and completeness of his cooperation, and the nature and extent of the assistance. 500 F.3d at 763. We concluded, however, that the reasons given were not sufficient to justify the magnitude of the reduction in the context of a guideline system that typically employs adjustments of two, three, and four levels. *Id.* at 763-65.

We observed that the district court did not identify how Burns's timeliness provided any discernible benefit. *Id*. at 764. We reasoned that the district court's emphasis on Burns's truthfulness and completeness, divorced from an assessment of the value of his assistance, did not justify treating Burns as an exceptional cooperator, particularly in view of the district court's contemporaneous announcement in another case of a "bright-line rule" that "any defendant who is timely, completely truthful, complete, reliable, and tells the government everything they need to know deserves more than 50 percent" in reduction of sentence. *Id.* at 764 & n.6; *see Saenz*, 428 F.3d at 1162-63. We determined that the district court applied an improper test regarding the "nature and extent" of assistance by focusing on whether the defendant "provided all of the information he knew," *Burns II*, 500 F.3d at 759 (internal quotation omitted), because "the proper analysis under § 5K1.1(a)(3) focuses on the nature and extent of the actual, discrete, and specific activities constituting the assistance, regardless of the opportunities available or the defendant's willingness and ability to provide more." *Id*. at 765.

At bottom, the Supreme Court's decision in *Gall* regarding § 3553(a) does not undermine the conclusion of the panel dissent in *United States v. Burns*, 438 F.3d 826 (8th Cir. 2006) ("*Burns I*"), *vacated and reh'g en banc granted*, (8th Cir. May 18, 2006), adopted in substance by the en banc court in *Burns II*: "[E]ven after giving due respect to the carefully considered views of a district judge who has had the experience of sentencing untold defendants over the years, the [ten-level] reduction

in this case was excessive in light of the relative insubstantiality of Burns's assistance." *Burns I*, 438 F.3d at 832 (Wollman, J., dissenting).[9]

## III.

The en banc court charts a different course. It appears that so long as a sentencing court makes a § 3553(e) reduction that is not "capricious, whimsical, impressionistic, or ire-driven," *ante*, at 16, it will be affirmed. No longer is there concern that a major reduction for a minor cooperator leaves little room to recognize assistance from major cooperators, *Haack*, 403 F.3d at 1005-06, or that major reductions for minor cooperators deprive the system of "any meaningful sense of proportionality." *Burns II*, 500 F.3d at 766.

---

[9]The statement in *Gall* that "*all* sentences" should be reviewed under a deferential abuse-of-discretion standard, *ante*, at 14 (quoting 128 S. Ct. at 591) (emphasis added by majority opinion), plainly refers to sentences imposed under § 3553(a) pursuant to the remedial opinion in *Booker*. *See Gall*, 128 S. Ct. at 594 ("Our explanation of 'reasonableness' review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."). In any event, it is common ground that the reduction of Burns's sentence should be reviewed for abuse of discretion. The question here is whether abuse-of-discretion review of a reduction under § 3553(e) differs from review of a sentence imposed under § 3553(a), given the different purposes of appellate review and the absence of constitutional concerns under § 3553(e). The majority seems to believe that *United States v. Livesay*, 525 F.3d 1081 (11th Cir. 2008), supports its approach, *ante*, at 14, but that case does not address the question presented in this appeal. *Livesay* had no occasion to apply the abuse-of-discretion standard to determine the reasonableness of a substantial-assistance reduction, because it reversed the district court for committing "procedural" error. 525 F.3d at 1092. *Livesay* also did not involve § 3553(e). When a court imposes sentence above the statutory minimum, as in *Livesay*, a defendant's assistance is likely just another factor to be considered under § 3553(a), *see United States v. Lazenby*, 439 F.3d 928, 933-34 (8th Cir. 2006), such that *Gall* is directly applicable.

The decision is a victory for Burns, but it will not necessarily benefit the class of cooperating defendants as a whole. Unlike sentencing under § 3553(a), where the district court is the sole actor and exercises what is now largely unconstrained discretion, reductions under § 3553(e) involve another actor. The United States Attorney, so long as he or she acts with no unconstitutional motive, retains sole discretion to determine whether a substantial-assistance motion should be filed under § 3553(e). Without such a motion, the court may not sentence below the statutory minimum.

The statute does not define what level of assistance counts as "substantial," and the United States Attorney, in setting that bar, is entitled to make a "rational assessment of the cost and benefit that would flow from moving." *Wade v. United States*, 504 U.S. 181, 187 (1992). If a United States Attorney is not convinced that reductions under § 3553(e) for cooperators who provide relatively modest assistance will be correspondingly modest, then it would be rational for the United States Attorney to raise the bar, and withhold motions for some borderline cooperating defendants, until the sentencing court's decisions demonstrate a satisfactory degree of proportionality. *See Saenz*, 428 F.3d at 1163. On the other hand, the United States Attorney may well find it necessary and proper to give the district court a better sense of how he or she evaluates various cooperators on the continuum of substantial assistance, with all parties cognizant that these matters cannot be defined with mathematical precision.

As Judge Wollman aptly put it in *Burns I*, "neither prosecutors nor district courts should yield to the temptation of indulging solipsistic preferences in recommending and imposing sentences." 438 F.3d at 832 (Wollman, J., dissenting). "District judges after all are not minions of the prosecutor's office. By the same token, United States Attorneys are not subalterns of the district court." *Id.* The history of conflict between the United States Attorney and the district court in the § 3553(e) cases brought to this court is not encouraging, but perhaps the process set

in motion by the en banc court's elimination of meaningful appellate review will help to foster an equilibrium.

I respectfully dissent.

_____