# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2721

_____

United States of America,      *
     *
         Appellant,      *
     *    Appeal from the United States
         v.      *    District Court for the Western District
     *    of Missouri.
Elisa Salas-Barraza,      *
     *
         Appellee.      *

_____

Submitted: March 13, 2009
Filed: September 1, 2009

_____

Before SMITH, GRUENDER, BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Elisa Salas-Barraza pleaded guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). At sentencing, Salas-Barraza faced the statutory mandatory minimum of 120 months' imprisonment because she had two criminal history points and did not qualify for the safety valve. The government made a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. 5K1.1, which the district court granted. The district court then imposed a sentence of five years' probation with six months' home confinement. The government appeals, arguing that in fashioning Salas-Barraza's sentence, the district court impermissibly based its sentence on factors other

than assistance-related considerations as required by § 3553(e). We now vacate Salas-Barraza's sentence and remand for resentencing consistent with this opinion.

## I. *Background*

Salas-Barraza, along with her father, Noah Salas, and other family members, participated in a large-scale drug conspiracy. The conspiracy included the distribution of methamphetamine and marijuana from the family home in Kansas City, Missouri. Undercover officers purchased methamphetamine, cocaine, marijuana, and guns from Noah Salas. From October 2005 until October 16, 2008, Noah Salas distributed over 504 grams of methamphetamine.

A court-authorized wiretap on Noah Salas's telephone revealed that Salas-Barraza was actively involved in the drug conspiracy. Investigators learned that Salas-Barraza would fill orders for methamphetamine if Noah Salas was not present at the residence; in addition, she would take orders for methamphetamine from customers calling for Noah Salas.

Salas-Barraza was arrested in July 2006; thereafter, she agreed to cooperate with the government and gave a full statement of her activities and those of her relatives in a proffer session with investigators.

In October 2006, a federal grand jury returned a 40-count superseding indictment, charging Salas-Barraza and 19 other defendants with various drug trafficking offenses. Specifically, the indictment charged Salas-Barraza with one count of conspiracy to distribute methamphetamine in an amount of 50 grams or more, in violation 21 U.S.C. § 841(a)(1) and (b)(1)(A); one count of aiding and abetting the distribution of methamphetamine in an amount of five grams or more, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2; and criminal forfeiture.

Pursuant to a plea agreement, Salas-Barraza pleaded guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine and criminal forfeiture. The presentence investigation report (PSR) concluded that Salas-Barraza would have an advisory Guidelines range of 63 to 78 months' imprisonment but for the existence of a 120-month mandatory minimum. According to the PSR, Salas-Barraza's "sentencing guidelines [were] restricted to the statutory minimum of 120 months as she [did] not qualify for the Safety Valve due to her having two criminal history points."

Thereafter, the government filed a substantial assistance motion, noting that Salas-Barraza had "agreed to cooperate with investigators by fully confessing her role in the conspiracy" and "to assist law enforcement with the ongoing investigation of this large scale conspiracy." Additionally, the government indicated that Salas-Barraza "was able to verify many aspects of the conspiracy known to law enforcement"; to "detai[l] the dealings of some of the co-conspirators," including her father and uncle; and "to paint a clearer picture of the conspiracy for law enforcement officials." Finally, the government stated in its motion that Salas-Barraza had agreed to testify against many of her codefendants and that she "st[ood] ready to continue to assist the government, if needed." The government asked the district court to depart downward to the extent that "fully reflects [the] defendant's past and possible future assistance" but did not specify a numerical amount in its motion.

At sentencing, the court requested the government's assistance in "evaluating the extent of the defendant's cooperation" by asking the government to "grade" the assistance, using an "A through F scale." The government then replied:

> Judge, I think it was probably a B or B plus. She did everything the government asked her to do. Because of her position within the conspiracy, the conspiracy involved other family members, put her in a difficult position. But she did inform us of things that we did not know. She informed us of things and verified things that we already knew

-3-

inside this conspiracy. So she did a very good job, Judge. It was better than average.

She was in a difficult position. And she did everything we asked her to do. She gave us information that was pertinent and needed by the government. She also stood ready to testify, if need be, against even family members. So, again, being in a very difficult position, she did everything that we asked her to do.

As a result, the district court granted the motion for downward departure and expressed its belief that such motion "opens up then the full range of sentencing options." The district court then asked Salas-Barraza's counsel for her sentencing recommendation. In response, Salas-Barraza's counsel expressed her belief that the appropriate "starting point" for a departure ruling was a "63-month range"—the range that would have applied but for Salas-Barraza's criminal history score disqualifying her for safety valve treatment. Counsel suggested an "extremely significant departure" of 30 to 36 months' imprisonment based on the "courage" that it took for Salas-Barraza to cooperate in a case involving family members. Counsel also noted the numerous letters of support by family and friends urging leniency and Salas-Barraza's desire to turn her life around and return to her children.

When the court then asked the government for its recommendation, the government replied that it was "going to leave any sentence you give Ms. Salas-Barraza to the Court. The government believes the starting point is, obviously, the mandatory minimum of 120 months. Half of that, 60 months or something just short of that would be appropriate in this situation."

The court then asked the government to compare Salas-Barraza's role in the conspiracy to that of coconspirator Victoria E. Ramos, who had received a 30-month sentence. According to the government, Salas-Barraza was "a little more involved" than Ramos "because of her father and probably her father's trust in her to carry on

some of these drug dealings when he was not available, not around the house." The government found "a difference in the level of activity between Ms. Salas-Barraza and Ms. Ramos," concluding that "Ms. Ramos was probably the least culpable out of all the defendants in this case." As to Salas-Barraza, the government stated that "she did not have as big a role as most of the other people in the conspiracy" and recognized that the PSR "adequately reflects that she was not the main person in this conspiracy" and that she "did deserve a two-level role reduction, mitigating role for her role in the offense."

Thereafter, the district court engaged in a lengthy sentencing colloquy, stating:

Ms. Salas, I am required to consider the United States Sentencing Guidelines and the factors in 18 USC 3553(a). I'm also required to consider in this case the factors in 5K1.1 of the sentencing guidelines, which tells me that I have to evaluate the significance and usefulness of your assistance, taking into account the government's evaluation, which is why I asked Mr. Marquez to grade your cooperation.

I take into account the truthfulness, completeness and reliability of any information provided by the defendant here. There's no indication you've been anything other than truthful, complete and reliable under some very trying circumstances. I recognize that your involvement in this conspiracy was driven to a large extent by the involvement of your family and, particularly, your father.

I have to consider the nature and extent of your assistance, any danger or risk of injury to the defendant or the defendant's family. And I suppose there is always some risk involved when a person provides assistance to the government. Here, I'm not aware of any unusual risk or threat of injury.

And then the timeliness of the defendant's assistance. And there's no indication that you've been anything other than timely. So all of those factors seem to weigh in your favor.

Additionally, I turn to 18 USC 3553 and there I'm told I'm to impose a sentence sufficient but not greater than necessary, a phrase often referred to as the parsimony phrase of that statute. Not greater than necessary to comply with the purposes of the statute, considering the nature and circumstances of the offense and the history and characteristics of the defendant.

As I have told every defendant who's come in in this case, I consider this to be a serious offense. The number of defendants, the quantity of drugs, the scope of the conspiracy, is great. And you played a role. Now, were you as involved as Ms. Bustamante or Mr. Felix-Moya or even your father? No, you weren't. But your role has been recognized by the two-level reduction done by the probation office in calculating the guideline range. That really has no effect in this case if I treat the effective guideline range to be 120 months, which is what the statutory minimum is. But it is recognized in the calculations.

Then I consider your personal history and characteristics. And, Ms. Salas, you don't have to convince me that you're a good person. I think you are.

Your life to some extent has been a struggle and I recognize that. You have made some bad decisions. You've associated with some people who also made bad decisions. But I think that at your core you are a good person who's trying to do the best she can do.

I don't consider your criminal history to be especially bad. There's some things I'm sure you wish you hadn't done. But nevertheless it's not as though you're robbing liquor stores or convenience stores at the point of a gun.

The sentence I impose should be one that reflects the seriousness of the offense, promotes respect for the law and provides just punishment.

The scope of this conspiracy is such that it almost cries out for a custody sentence in your case. There is simply no way to minimize the

scope of the conspiracy. On the other hand, the sentence, itself, should promote respect for the law and provide just punishment. If I lock you up, there are people in this room who are going to believe that that's not a just punishment in this case. There are probably people in the community that, when all of what I know is explained to them, they would think that it's not a just punishment.

The sentence I impose should be one that affords an adequate deterrence to criminal conduct. That means to deter you and to deter others who might be tempted to do what you did. I don't think a custody sentence is necessary in this case to deter you. I think you have been sobered by this experience and by facing the reality of what your conduct has resulted in for your family and in particular your daughters. I'm not sure that you would ever put your family in this situation again.

On the other hand, if I don't put you in prison there are others who are going to say, well, look at Salas. She was involved in this conspiracy. She was doing drugs. She was dealing drugs. And she didn't go to prison, so I'll do that. You know, I'll take probation. I'll run the risk. And so I'm not sure that failing to put you in prison has a deterrent effect on others.

The sentence I impose should protect the public from further crimes of the defendant. I don't think locking you up is necessary to do that.

It should provide the defendant with needed educational and vocational training, medical care and other correctional treatment in the most effective manner.

It should consider the kinds of sentences available and should avoid unwarranted sentence disparities between you and others who have engaged in the same or similar conduct, occupying the same or similar criminal history category.

Anything, other than what we would call a routine departure in this case, is going to be different than what other defendants get.

If I treat your sentencing range as being 120 months, a routine departure would be about 60 months of imprisonment. I think defendants in other districts would be happy to receive a 50 percent departure from the lower end of the guidelines. This district is a little unusual in that respect.

But in addition to considering the disparity issue on the universal or global sense, I also have to consider it within the context of this case which is why I asked Mr. Marquez to compare and contrast your involvement with that of Ms. Ramos. I'm sure you know Ms. Ramos received a sentence of 30 months. Your involvement probably is at least the equal of Ms. Ramos, if not greater than hers. But there are some other differences. Ms. Ramos chose to be with Ms. Bustamante. She had a relationship with her. But there are times when she didn't need to be involved in the actual distribution but she chose to be involved in it.

Your situation is a little different because it was your father who got you involved. And I think that there is a natural tendency in all of us to try to do those things which are pleasing to our parents, even when those things are wrong and when those things are bad. And it's a form of pressure that may be greater than participating with someone that you care for because there's a different relationship between father and a child and mother and a child.

I'm struggling here, Ms. Salas, because I don't want to send you to prison. And yet, you know, I've taken an oath to apply the law of the Circuit and the laws enacted by Congress.

When it's all said and done, I'm the one that has to deal with my own conscience. I don't, I simply don't think that prison is necessary in this case.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of this Court that the Defendant Elisa Salas-Barraza is hereby placed on probation for five years. The fine will be waived. I impose a special assessment in the amount of $100.

The government then objected to the sentence of probation pursuant to 18 U.S.C. § 3553, expressing its belief that the reasons stated by the district court were insufficient to justify a sentence of probation. The court then asked the government whether the court could say anything else that would justify a sentence of probation. The government replied, "I don't believe so at this time, Judge."

## II. *Discussion*

The government asserts that the district court erred in sentencing Salas-Barraza to five years' probation following her guilty plea to a charge of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)—an offense normally requiring a mandatory minimum sentence of 120 months' imprisonment. The government acknowledges that it filed a motion for downward departure based upon Salas-Barraza's substantial assistance, thereby allowing for the imposition of a sentence below the 120-month minimum, and recommended a sentence of 60 months' imprisonment; but, the government maintains that Salas-Barraza's cooperation was not so exceptional as to justify a sentence of probation. According to the government, the district court erroneously determined that probation was appropriate by relying on the sentencing factors enumerated in 18 U.S.C. § 3553(a), rather than focusing exclusively on the nature, significance, and timing of Salas-Barraza's substantial assistance. The government maintains that where, as here, it files a motion for substantial assistance that results in a sentence below the mandatory minimum, the extent of the deviation must be based exclusively on assistance-related factors.

Additionally, the government contends that there was nothing extraordinary about Salas-Barraza's cooperation. She timely furnished helpful information to the government and agreed to testify, if necessary, against her father and other relatives who were involved in the drug conspiracy. But she did not engage in undercover buys or place herself in physical jeopardy. Salas-Barraza was never actually required to testify against any of the other defendants. The government thus argues that the

district court erred in considering non-assistance related factors in imposing probation. The government also contends that the court further erred by imposing a sentence that was so disproportionate to the nature and extent of the substantial assistance as to render the sentence unreasonable.

In response, Salas-Barraza argues that the district court did not err in sentencing her to five years' probation because *Gall v. United States*, 128 S. Ct. 586 (2007), renders the "extraordinary circumstances" test completely null and void in both Guidelines cases and § 3553(e) cases. She contends that the rejection of the rigid mathematical formula is not limited to cases under the Guidelines and, therefore, the rejection of such a formula also applies in cases under § 3553(e). As a result, she asserts that the government's argument that the departure in this case must be based exclusively on assistance-related factors and that an extraordinary reduction to probation must be supported by extraordinary assistance-related factors is without merit under *Gall*.

This court, sitting en banc, recently examined whether *Gall* abrogated or overruled our prior decision "'that a reduction in sentence based on [18 U.S.C.] Section 3553(e) may be based only on assistance-related considerations,' *United States v. Williams*, 474 F.3d 1130, 1131 (8th Cir. 2007)." *United States v. Burns*, __F.3d__, 2009 WL 2525585, at *5 (8th Cir. Aug. 20, 2009). In reaffirming our holding in *Williams* and its progeny, we stated:

> We have revisited the holding in *Williams* post-*Gall* and have concluded that *Gall* has not affected the limitations imposed by 18 U.S.C. § 3553(e) upon the district court's authority to impose a sentence below the statutory minimum. *See United States v. Johnson*, 517 F.3d 1020 (8th Cir. 2008); *United States v. Freemont*, 513 F.3d 884 (8th Cir. 2008). We adhere to the holdings in those cases. As we read *Gall*, the Court there was concerned about the heightened standard of review that appellate courts had imposed through the application of concepts such as extraordinary/exceptional circumstances, departure percentages,

-10-

proportionality review, and the like and said nothing that would indicate that district courts are not bound by the strictures set forth in § 3553(e).

*Id*. at *6 (footnote omitted). Therefore, post-*Gall*, district courts must continue to base their sentence reductions under § 3553(e) solely on assistance-related considerations. *See id*.

Here, a review of the district court's sentencing colloquy reveals that it did not rely solely on assistance-related considerations in sentencing Salas-Barraza to five years' probation. The district court specifically stated that it was "required to consider the [Guidelines] and *the factors in 18 USC 3553(a)*." (Emphasis added.) The district court then discussed, in detail, *all* of the § 3553(a) factors in determining an appropriate sentence. Because the district court did not base its sentence solely on assistance-related considerations, we vacate the sentence and remand for resentencing consistent with this opinion.

### III. *Conclusion*

Accordingly, we vacate Salas-Barraza's sentence and remand to the district court for resentencing consistent with this opinion.

_____